86 607
a194s 194

# Young Women's Christian Association v. The International Committee of Young Women's Christian Associations.

1. TRADE NAMES—*Right of a Person to Use His Own Name.*—A person can not be entirely prohibited from using his own name as a trade name in any lawful occupation, but he can be restrained from using it in such

a manner as to perpetuate a fraud upon the public or to injure another person of the same name.

**Bill for an Injunction.**—Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899. Reversed and remanded. Opinion filed January 30, 1900.

CHARLES E. POPE, attorney for appellant.

Under the laws of the State of Illinois no corporation can adopt either the name of another existing corporation or a name liable to be mistaken for the name of said existing corporation. Starr & Curtis' Stats., Vol. 1, Ch. 32, Secs. 2, 53; The Elgin Butter Co. v. The Elgin Creamery Co., 155 Ill. 127; Illinois Watch Co. v. Pearson et al., 140 Ill. 423; Hazelton B. Co. v. Tripod B. Co. et al., 142 Ill. 494; The Drummond Tobacco Co. v. Charles H. Randle et al., 114 Ill. 412; Sykes v. The People, 132 Ill. 32, 42; Presby. Church of Harrisburg, 2 Grant's Cases, 240; Holmes, Booth & Haydens v. Holmes B. & Mfg. Co., 37 Conn. 278; Howard v. Henriques et al., 3 Sand. (N. Y. Sup. Ct.) 725; In re Sons of Progress, 14 Weekly Notes of Cases, 31; F. L. & T. Co. v. F. & T. Co. of Kansas, 21 Abbott N. C., 104; U. S. Mercantile Reporting Agency v. U. S. Mercantile & Reporting Association, 21 Abb. N. C. 115; Accident Insurance Co. v. Accident, Disease & Gen. Insurance Corporation, 51 L. T. Rep. (N. S.) 597; Guardian F. and L. Ins. Co. v. The G. & Gen. Ins. Co., 50 L. J. Rep. 253; Hendricks v. Montague, 17 L. R., Ch. Div. 638; Merchant Banking Company of London v. Merchants Joint Stock Co., 9 L. R., Ch. Div. 560; International Trust Co. v. International L. & T. Co., 153 Mass. 271; In re U. S. Mercantile R. & C. Agency, 115 N. Y. 176; The State, etc., McGrath, 92 Mo. 355.

In considering this question, it is immaterial what the moral intent, or rather immoral intent, of the defendant or its officers may have been. The unfair appropriation or act is what is enjoined. Every one is responsible for the reasonable consequences of his acts. Holmes, Booth & Haydens v. Holmes, B. & H. Co., 37 Com. 278; Farmers Loan & Trust Co. v. Farmers Loan & Trust Co. of Kansas,

21 Abb. New Cases, 104, 109, 110; Hendricks v. Montague, T. 17 L. R., Ch. Div. 638.

If intent be material, the mere adoption of a similar name is sufficient to show the intent. The law will impute intent to deceive and mislead from the mere similarity of name, as well as from other circumstances and evidence in the case. Farmers, etc., Trust Co. v. Farmers, etc., T. Co. of Kansas, 21 Abbott's New Cases, 104; U. S. Mercantile Reporting Co. v. U. S. Mercantile Reporting Ass'n, 21 Abb. New Cases, 115, 117; Accident Ins. Co. v. Accident, Disease & Gen. Ins. Corporation, 51 Law Times Rep. (N. S.) 597; The Guardian Fire & Life Assn. Co. v. The Guardian & General Ins. Co., 50 L. J. R. Ch. 253; Russia Cement Co. v. Le Page, 147 Mass. 206; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462; Nokes v. Mueller, 72 Ill. App. 434; Merchants Detective Association v. Detective Mercantile Agency, 25 Ill. App. 250; Boston Diatite Co. v. Florence Manufacturing Co., 114 Mass. 69; Van Auken Steam Co. v. Van Auken Steam Specialty Co., 57 Ill. App. 241, 242; Hendricks v. Montague, 17 L. R., Ch. Div. 638.

Actual injury by the similarity of names is not necessary. It is sufficient if the public would be likely to be deceived. The very object of an injunction is to prevent what may happen. Mossler v. Jacobs, 66 Ill. App. 571.

Bentley & Burling, attorneys for appellee.

Analogy between trade-marks and corporate names stated. See Boone on Corporations, Sec. 32.

Trade-marks are recognized as a means of pecuniary profit only. Day v. Brownrig, 10 Ch. D. 294; Street v. Union Bank of Spain and England, 30 Ch. D. 156; Clark v. Freeman, 17 L. J., Part I, 142.

No question of pecuniary profits involved.

Only the first user of a trade-mark is entitled to protection. McLean v. Fleming, 96 U. S. 245; Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51; Selchow v. Baker, 93 N. Y. 59; Wolfe v. Goulard, 18 How. Pr. 64; Bouvier, tit. "Trademark."

Claim of complainant that its affiliation with first user, gives it the same rights as first user refuted. See Hygeia Water Ice Co. v. New York Hygeia Ice Co., Limited, 19 N. Y. Sup. 602.

Descriptive words can not be appropriated as a trade-mark. Amoskeag Co. v. Trainer, 101 U. S. 51; Caswell v. Davis, 58 N. Y. 223; Rumford Chemical Works v. Muth, 35 Fed. Rep. 524; Stokes v. Allen, 56 Hun, 526; Fay v. Fay (N. J.), 4 Central R. 241; Selchow v. Baker, 93 N. Y. 59; Bolander v. Peterson, 136 Ill. 215; Browne on Trade-marks, 229 and 232; Burgess v. Burgess, 17 Eng. L. & Eq. 260; Bininger v. Wattles, 28 How. Pr. 206; Koehler v. Sanders, 122 N. Y. 65; Trask Fish Co. v. Wooster, 28 Mo. App. 408; Browne on Trade-marks, 145–6; Choynski v. Allen, 39 Cal. 501; Van Beil v. Prescott, 46 N. Y. Super. Ct. 542; Helmbold v. Helmbold Mfg. Co., 53 How. Pr. 453.

Resemblance between trade-marks due to the use of descriptive words gives no right of action, see Amoskeag Mfg. Co. v. Spear, 2 Sandf. (N. Y. Sup. Ct.) 599.

Descriptive words can not be appropriated as part of a corporate name stated and illustrated. Employers Liability Assurance Corporation v. Employers Liability Insurance Company, 24 Abb. N. C. 368, 16 N. Y. Sup. 396; Farmers Loan & Trust Co. v. Farmers Loan & Trust Co. of Kansas, 21 Abb. N. C., 104; 2 N. Y. Sup. 296; Australian Mortgage Loan & Finance Co. v. Australian & New Zealand Mortgage Co., Weekly Notes for 1880, p. 6; Colonial Life Assurance Co. v. Home & Colonial Life Assurance Co., Limited, 33 Beav. 548; Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598.

(Analogy of names involved in suit at bar to names of mutual life insurance companies noted.) Merchants Detective Association v. Detective Mercantile Agency, 25 Ill. App. 250; Newby v. Oregon Central R. R. Co., Deady, 600.

Descriptive words must not be used by a later corporation with the intent to defraud an earlier corporation. Meneely v. Meneely, 62 N. Y. 427; Knott v. Morgan, 3 Keen, 215; Croft v. Day, 7 Beav. 84; Lee v. Halley, L. R.,

5 Ch. App. Cas. 155; India & China Tea Co. v. Teede, Weekly Notes for 1871, p. 241; Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 528; Koehler et al. v. Sanders et al., 122 N. Y. 65; Elgin Butter Company v. Elgin Creamery Company, 155 Ill. 127; Sebastian on Trade-marks, 283 and 151.

As to whether defendant in choosing its name was moved by a fraudulent intent toward complainant, examined and answered.   Ottoman Cahvey Company v. Dane, 95 Ill. 204.

Resemblance of later corporate name to earlier where resemblance is due to use of descriptive words, not prohibited in Illinois.   Statutes of Illinois (Starr & Curtis' Ed.), Vol. 1, Ch. 32, Section 2; Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 142 Ill. 494; Statutes of Illinois (Starr & Curtis' Ed.), Vol. 1, Ch. 32, Section 65; Illinois Watch Case Co. v. Pearson et al., 140 Ill. 423; Merchants' Detective Association v. Detective Mercantile Agency, 25 Ill. App. 250; Drummond Tobacco Co. v. Randle et al., 114 Ill. 412.

Claim of complainant that intent is immaterial where resemblance exists, examined and refuted.   Newby v. Oregon Central Ry. Co., Deady, 609; Merchants' Detective Association v. Detective Mercantile Agency, 25 Ill. App. 250; In re First Presbyterian Church of Harrisburg, 2 Grant's Cases, 240; In re U. S. Merc. Rep. & Coll. Agency, 115 N. Y. 176; Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Co., 37 Conn. 278; Howard v. Henriques, 3 Sandf. 725; In re Sons of Progress, 14 Weekly Notes, 81; Farmers' Loan & Trust Co. v. Farmers' Loan & Trust Co. of Kansas, 21 Abb. N. C. 104; U. S. Merc. Rep. Co. v. U. S. Merc. Rep. & Col. Ass'n, 21 Abbott's N. C. 115; Accident Insurance Co., Limited, v. Accident, Disease & General Insurance Corporation, Limited, 54 L. J. R. Ch. 104; Guardian Fire & Life Insurance Co. v. Guardian & General Insurance Co., Limited, 50 L. J. R. Ch., 243; Hendricks v. Montague, 50 L. J. R. Ch., 257; Turton et al. v. Turton et al., 58 L. J. R. Ch., 677; Merchants Banking Co. of London v. Merchants' Joint Stock Bank, 9 L. R. Ch. D.

560; International Trust Co. v. International Loan & Trust Co., 153 Mass. 271; State v. McGrath, 92 Mo. 355; Singer Machine Manufacturers v. Wilson, L. R. (H. L. Cas.), Vol. 3, Part I, p. 376.

As to claim of complainant that mere resemblance of descriptive names proves fraud as against later user, answered. See Van Auken Steam Company v. Van Auken Steam Specialty Company, 57 Ill. App. 241; Mossler v. Jacobs, 66 Ill. App. 571; N. K. Fairbank Company v. Swift & Company, 64 Ill. App. 490; Bolander v. Peterson, 136 Ill. 215; Amoskeag Mfg. Co. v. Spear, 2 Sand. (N. Y. Sup. Ct.) 599; Rubel v. Allegretti Chocolate Cream Company, 76 Ill. App. 589; 177 Ill. 133; Nokes v. Mueller, 72 Ill. App. 434; Lawrence Mfg. Company v. Tennessee Mfg. Company, 138 U. S. 537; Sebastian on Trade-marks, p. 151.

The evidence fails to show any such injury to complainants as justifies an injunction. 1 High on Injunctions, p. 9, section 9.

MR. JUSTICE SHEPARD delivered the opinion of the court.

This is a bill for an injunction, brought by the appellant against the appellee.

The prayer of the bill is that the appellee, its agents, etc., may be enjoined and restrained from using or soliciting money or funds under the name "International Committee of Young Women's Christian Associations," or any name so similar to the complainant's or in colorable imitation thereof, as to deceive and mislead the public and individuals or corporations into believing that the defendant is really the complainant or a committee or representative of the complainant, and from organizing other associations under names so similar to that of appellant as to deceive and mislead the public, etc.

The appellant is one of a large number of women's associations, either incorporated or unincorporated, that have existed throughout the land for a substantially common purpose for many years, and have operated in their respective local spheres under the name of "Women's Chris-

tian Association," or " Young Women's Christian Associa-
tion," and that have affiliated with each other since 1881,
certainly, and perhaps prior thereto and subsequent to 1871,
to a limited extent, through biennial conferences known as
the "International Conference of Women's Christian Asso-
ciations of the United States and British Provinces."

These international conferences are composed of dele-
gates from Women's Christian Associations in the United
States and British Provinces, and assemble every two years
to discuss and formulate plans for the common interest and
guidance of the several affiliated associations, and for the
formation of new associations under like names and for like
objects.

There does not appear to have ever been any distinction
between the names "Women's" and "Young Women's"
as applied to such associations, the objects in either case
being the same, viz., the promotion of the moral, religious,
intellectual and temporal welfare of women, especially
women who are dependent upon their own exertions for
support, or desire to become so, and the work along such
lines has been mostly among young women.

The appellant became incorporated, under the laws of
Illinois, in April, 1877, by the name, " The Women's Chris-
tian Association," which name was changed, by apt amend-
ment, in October, 1887, to "The Young Women's Christian
Association of Chicago."

From the first, the appellant was an affiliated member of
and participant in the biennial international conferences
above referred to, and, especially, at the sixth of said bien-
nial conferences held in St. Louis in 1881, at which a
standing committee was created for the organization and
fostering of "Young Women's Christian Associations."

The chartered objects of appellant are as above substan-
tially set forth in general terms, and in effectuation of such
purposes, it (among other charitable acts) maintains, in Chi-
cago, two boarding-houses—one of which, upon Michigan
Avenue, is large and valuable and is owned by appellant—
an employment bureau and free medical dispensary, a

library, etc., and in the course of its work collects and disburses large sums of money annually.

If not, in so many words, specifically alleged and proved, the fair inference from the record is that appellant is mainly enabled to carry on its extensive charity and good work by the aid of contributions of money and other valuable articles from persons who are charitably disposed.

Unlike numerous of the organizations of like name and purposes in other places, appellant has not had any religious or sectarian test as a prerequisite to its voting and managing memberships, other than that of Christian character, although its boards of management have consisted of representative women from almost every evangelical church denomination in Chicago.

At some one or more of the biennial international conferences, the question of applying the so-called " evangelical test " as a prerequisite to representation therein, was more or less pressed and discussed among the individual delegates, or some of them. The question considered was whether the conference should, or not, adopt a resolution that in the future no association should be permitted representation, unless its separate constitution should contain a provision making it a prerequisite to voting and office-holding membership therein, that they should be members in good standing of so-called evangelical churches, viz.:

Churches which, "maintaining the Holy Scriptures to be the only infallible rule of faith and practice, do believe in the Lord Jesus Christ, the only begotten Son of the Father, King of Kings and Lord of Lords, in whom dwelleth the fullness of the Godhead bodily, and who was made sin for us, though knowing no sin, bearing our sins in his own body on the tree, as the only name under Heaven given among men whereby we must be saved from everlasting punishment."

Such test, though discussed informally, was, through the influence of some of the leading members of the conferences, never formally acted upon in the conferences, but was kept out of the body. The result, however, was that sundry persons, who favored such a test, first met in Wis-

consin in 1886 or 1887, and afterward proceeded to procure the incorporation of appellee under the laws of Illinois, in 1891, in order that a central organization might exist in which such test should be applied.

The objects of appellee, as set forth in its incorporation papers are : " The organization and development of Young Women's Christian Associations for the promotion of the physical, social, intellectual and spiritual condition of young women," and its management is vested in a board of managers known and described as the " International Committee."

Since the organization and incorporation of the appellee it has worked in the previously chosen field of the appellant, and has organized in Chicago two associations known and called, respectively, the "North Chicago Young Women's Christian Association" and " West Chicago Young Women's Christian Association."

Mr. Wishard, who seems to have been the leading spirit in the organization of the appellee, testified upon the hearing below, and in responding to an inquiry if the adoption of the "evangelical test" were not the "primal reason" for forming the appellee corporation, said there were two reasons operating to that end—one of which was the necessity of an organization of its kind, and the other was that the organization must be evangelical; and a diligent examination of the record has failed to disclose to us any other necessity or reason.

Whether the principal work of appellee consists in the organization and development of associations, and not in directly administering benefits to young women who require help, leaving such work to the associations it promotes, is not very material for the purposes of this case.

The ultimate aim of its work is exactly the same as that of appellant, viz.: The administering of such benefits either directly or indirectly, and to accomplish that end successfully the appellee is employing the advantages derivable from its use of a name that is in effect undistinguishable, by the casual observer of it, from appellant's name.   Noth-

ing short of investigation would lead even the most careful bserver of appellee's name to any conclusion but that appellee is a committee of appellant and the associations with which appellant is affiliated, and in such respect it can not be successfully contended that appellee is not guilty. of the practice of legal deceit and imposition in the use of its name; and the inference from a consideration of the whole record is well nigh conclusive that actual deceit is intended. That such is the effect upon the public is abundantly illustrated by examples furnished by the record, if proof of what is so plainly apparent were needed.

Appellee admits the use by appellant of its name for many years prior to the adoption by appellee of its name. The objects and work of both parties being substantially the same, and their sources of support being substantially the same—each being the distributer of charitable contributions by others composing the public—and their field of labor being in common to the extent at least of the city of Chicago, it is practically impossible to separate the one from the other in the public thought and estimation, except by a critical investigation.

Even if we assume that, under the law of Illinois, articles of incorporation were properly issued to appellee by a name so similar to the one under which appellant was previously incorporated, the right of appellee to use such name, in the same kind of business and for like purposes pursued and followed by appellant, does not necessarily follow.

A man, and no less a corporation, may not be entirely prohibited from using his or its proper name in any lawful business or occupation, but he may properly be restrained from so using it in such a manner as to perpetrate a fraud upon the public, and an injury to another of the same name. Allegretti Chocolate Cream Co. v. Rubel, 86 Ill. App. 604. Allegretti v. Allegretti Chocolate Cream Co., 177 Ill. 129.

Here the appellant was for years confessedly occupying a great field of charitable work under a name that in a marked degree commanded respect and confidence. Charitably disposed persons knew of the good work in which it

was engaged, and through its name appellant had acquired valuable reputation as a dispenser of gifts to charity.

Into the midst of that work and into the presence of that reputation, the appellee, under the guise of a name that none but the wary investigator might separate from the appellant, has entered, and gone into competition with the appellant.

There can be no objection that appellee may continue to do its work for good, but in law, at least, it may not, in so doing, use a name so like that of the appellant in such manner as that the public shall be deceived and misled into believing that it is the appellant, when such use operates injuriously upon appellant.

We need not repeat the evidence, but the record shows conclusively that the use by appellee of its name in the way it has been and is continued to be used, works such an injury to appellant as the law will relieve against.

Confusion in the proper conduct of its affairs with third persons, and loss of contributions which, except for the use by appellee of a name so similar to that of appellant, would have come to appellant, are sufficient proofs of injury to property and property rights to sustain the allegations of the bill with respect of injury to appellant.

A great array of argument and authority upon a variety of questions not necessary to be treated of by us, can not be permitted to draw us away from the simple question involved and discussed by us.

The injunction asked for should have been allowed, and the decree dismissing appellant's bill and supplemental bill for want of equity is reversed, and the cause is remanded to the Superior Court, with directions to that court to grant a perpetual injunction against appellee in accordance with the prayers of said bill and supplemental bill.   Reversed and remanded with directions.