INTERNATIONAL COMMITTEE OF YOUNG WOMEN'S CHRISTIAN ASSOCIATIONS

*v.*

YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF CHICAGO.

*Opinion filed December 18, 1901—Rehearing denied February 7, 1902.*

1. NAMES—*when the use of descriptive terms will be enjoined.* That generic terms or mere descriptive words are the common property of the public and not ordinarily susceptible of appropriation by an individual, does not prevent the issuing of an injunction to restrain the use of such terms or words at the suit of one who has already adopted them, where the evidence shows a fraudulent design and that the public will be misled.

2. SAME—*use of name "International Committee of Young Women's Christian Associations" may be enjoined.* The use of the name "International Committee of Young Women's Christian Associations" will be enjoined at the suit of the Young Women's Christian Association, it appearing that such name was advisedly adopted by the defendant for the purpose of misleading the general public, and persons from whom it hoped to receive support by way of donations, into believing that it stood as the committee and representative of the Young Women's Christian Association.

WILKIN, C. J., and CARTER, J., dissenting.

*Y. W. C. A.* v. *Int. Com. Y. W. C. A.* 86 Ill. App. 607, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

BENTLEY & BURLING, for appellant.

CHARLES E. POPE, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a suit for an injunction brought by the appellee in the superior court of Cook county to enjoin the appellant, its agents, etc., from using the name "International Committee of Young Women's Christian Associations," or soliciting money or funds under said name, or under any name so similar to the name of appellee, or any colorable imitation thereof, as to deceive and mislead the public into believing that the appellant is the appellee or a committee or representative of the appellee, and from organizing associations under the name "The Young Women's Christian Association," or any name similar thereto, or any colorable imitation thereof, so as to deceive or mislead the public, etc. A supplemental bill having been filed, a hearing was had upon the original and supplemental bills, the answers and replications thereto, and documentary and oral testimony, and a decree was entered dismissing said suit for want of equity, and appellee having prosecuted an appeal to the Appellate Court for the First District, that court reversed the decree and remanded the cause, with directions to the superior court to grant a perpetual injunction against appellant in accordance with the prayer of the original and supplemental bills, to reverse which judgment the appellant has prosecuted an appeal to this court.

It clearly appears from the pleadings and proof that the appellee is one of a large number of associations of women, incorporated and unincorporated, that have existed in this country for many years, who have operated in their respective localities under the name of "The Women's Christian Association" or "The Young Women's Christian Association," and who have affiliated with each

other, since the year 1881 at least, through biennial conferences, known as "The International Conference of Women's Christian Associations of the United States and British Provinces," which conferences are composed of delegates from "The Women's" or "The Young Women's" christian associations throughout the countries named, and meet biennially for discussion of plans for the common interest and welfare of the several affiliated associations. No distinction seems to have been drawn between the names "Women's" and "Young Women's," as applied to the various local associations, the object of each being the promotion of the moral, religious, intellectual and temporal welfare of women, especially young women who are self-supporting.

Appellee first became incorporated in 1877 under the name "The Women's Christian Association," which name was in 1887 changed to "The Young Women's Christian Association of Chicago." In effectuation of its purposes it maintains two boarding houses, a free medical dispensary, library, employment bureau, etc., and is enabled to do so by the aid of contributions of money and other valuable articles from its friends. No religious or sectarian test has been required of the voting and managing members of the association other than that of Christian character, although its managing board has been composed of women from nearly all of the evangelical churches of Chicago; neither has such a test been applied as a prerequisite to representation in the biennial international conferences, but at some one or more of these conferences the question of applying the so-called "evangelical test" was more or less urged and discussed informally. The mooted question thus discussed was whether or not the conference should adopt a resolution that in the future no association should be permitted representation in the conference unless its separate constitution should contain a provision making a prerequisite to voting and office-holding membership therein that

they should be members in good standing of evangelical churches. Through the influence of some of the leading members of the conference the proposed resolution was never acted upon by the conference but was kept out of that body. The result was, that steps were taken by at least some of those who favored such a test, to organize a central association of women to which no member of any association should be admitted unless its voting and office-holding membership should be limited to women who were members of churches subscribing to the "evangelical test." The first convention of these latter persons was held in 1886, at Lake Geneva, Wisconsin, and at that time a national committee was elected, which, on October 9, 1891, became incorporated in this State as "International Committee of Young Women's Christian Associations," the appellant here. The objects of the appellant, as set forth in its charter, are: "The organization and development of young women's christian associations for the promotion of the physical, social, intellectual and spiritual education of women," and its management is vested in a board known and described as "International Committee." Since its organization and incorporation, local associations said to number over three hundred have come under its management and control, two local associations having been organized in Chicago, the previously chosen field of appellee, under the names, respectively, of "The North Chicago Young Women's Christian Association" and "The West Chicago Young Women's Christian Association," and in furtherance of that work the appellant has issued and circulated through the mails a publication known as "The Young Women's Christian Association Quarterly," which was latterly succeeded by "The Young Women's Christian Association Evangel." Much confusion has arisen on account of the similarity in name of the appellant and appellee. Letters intended for the one have been delivered to the other, visitors intending to call upon the one

have called upon the other, and donations intended for the one have been received by the other.

It is apparent the motive for the creation of the "International Committee" was brought about by the failure of "The International Conference" to adopt the resolution requiring the "evangelical test." That those persons who favored the adoption of such a resolution had a right to withdraw from the international conference when convinced that their views were not agreeable to the majority of the conference, and to call a convention of those who were favorable to their views, and to select a committee or board of managers to have general supervision over the work of the associations comprising that convention, is not denied and must be conceded by all. The question here, however, to be decided is, had such persons, upon their withdrawal and re-organization, a right to adopt as a name for its managing board "International Committee of Young Women's Christian Associations," a name which contains substantially the entire corporate name of appellee, a previously incorporated association, preceded by the words "International Committee of," which clearly indicate to the ordinary mind that appellant is a committee of appellee and the conference with which appellee is affiliated and with which appellant has no connection, and to use that name in the conduct of its affairs? We think not. The object, work, sources of support and field of labor of each being substantially the same, and the name of appellee having been adopted and in use by it many years prior to the incorporation of the appellant, the appellant had no right to adopt as its corporate name one so similar to that of appellee, or to incorporate in its name words which would indicate to the public that it was the representative of appellee and the conference with which appellee is affiliated. In addition to the similarity of name and the representation contained in appellant's name that appellant is the representative of appellee and the conference with which it

is affiliated, from an examination of the entire record it clearly appears that such name was adopted by the appellant advisedly, and for the purpose of leading the general public, and the persons with whom it was likely to be associated and from whom it hoped and expected to obtain support by way of donations, to believe that it stood as the committee and representative of the associations known as "The Young Women's Christian Association," then organized in the field where it expected to operate. Appellant may have felt justified in so doing by reason of the failure of the "International Conference" to adopt the "evangelical test," yet such conduct, in law, amounts to a fraud upon the public and appellee. While it is true that generic terms or mere descriptive words are the common property of the public and not ordinarily susceptible of appropriation by an individual, that fact will not prevent the issuing of an injunction to restrain the use of such terms and words at the suit of one who has already adopted them, where the evidence shows a fraudulent design and that the public will be misled.

In *Knott* v. *Morgan*, 3 Keen, 215, an injunction having been issued restraining the defendant from imitating the plaintiff's line of omnibuses, the court said: "It is not to be said that the plaintiffs have any exclusive right to the words 'Conveyance Company' or 'London Conveyance Company,' or any other words, but they have a right to call upon this court to restrain the defendant from fraudulently using precisely the same words and devices which they have taken for the purpose of distinguishing their property, and thereby depriving them of the fair profits of their business by attracting custom on false representation that carriages really the defendant's belong to and are under the management of the plaintiffs."

In *Croft* v. *Day*, 7 Beav. 84, Lord Langdale, in granting an injunction to restrain the defendant from using labels or show-cards calculated to produce deception, said: "My decision does not depend on any peculiar or exclusive

right the plaintiffs have to use the name of Day & Martin, but upon the fact of the defendant's using those names in connection with certain circumstances and in a manner calculated to mislead the public, and to enable the defendant to obtain, at the expense of Day's estate, a benefit for himself to which he is not in fair and honest dealing entitled."

In *Lee* v. *Halley*, L. R. 5 Ch. App. Cas. 155, the complainants being coal merchants carrying on business at 22 Pall Mall, London, as "The Guinea Coal Company," the defendant, their former manager, set up for himself in Beaufort Buildings, Strand, as "The Pall Mall Guinea Coal Company," and afterwards removed to 46 Pall Mall. An injunction having been granted restraining the defendant from trading in that name in Pall Mall, it was held by the court of appeals in chancery that the injunction was properly issued. In announcing the decision Lord Justice Giffard said: "I quite agree that they (the plaintiffs) have no property in the name; but the principle upon which the cases on this subject proceed is, not that there is property in the word, but that it is a fraud on a person who has an established trade and carries it on under a given name, that some other person should assume the same name with a slight alteration, in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name. * * * I think this injunction has been properly granted upon the well known principles of this court, which are applicable to all cases of this description, viz., that it is a fraud on the part of a defendant to set up business under such a designation as is calculated to lead, and does lead, other people to suppose that his business is the business of another person."

In *McLean* v. *Fleming*, 96 U. S. 245, it is said: "Nor is it necessary, in order to give a right to an injunction, that a specific trade-mark should be infringed, but it is sufficient that the court is satisfied that there was an intent

on the part of the respondent to palm off his goods as the goods of the complainant."

We are of the opinion the Appellate Court properly held that the name of the appellant is so similar to the name of appellee and so arranged as to deceive and mislead the public into believing that the appellant is the appellee, or a committee or representative of appellee and the conference with which it affiliates, and properly directed the superior court to grant a perpetual injunction against the appellant restraining it from using the name "International Committee of Young Women's Christian Associations," or any colorable imitation thereof, etc., as prayed for in said original and supplemental bills.

The judgment of the Appellate Court will therefore be affirmed.                              *Judgment affirmed.*

Mr. Justice Magruder: I take no part in this decision.

Mr. Chief Justice Wilkin, dissenting:

The prayer of the bill in this case is, in effect, that the defendant be restrained from using its corporate name, and the Appellate Court, in remanding the cause, directed the superior court "to grant a perpetual injunction against it, in accordance with the prayer of the bill and supplemental bill." The effect, therefore, of the affirmance of the judgment of that court will be to perpetually enjoin the defendant from using the name under which it was regularly incorporated. The corporate name of the complainant, as stated in the bill and admitted by the answer, is, "The Young Women's Christian Association of Chicago," and that of the defendant, "International Committee of Young Women's Christian Associations." The defendant has not, therefore, as stated in the foregoing opinion, adopted as a name for its managing board "a name which contains substantially the entire corporate name of the complainant, preceded by the words 'In-

ternational Committee of.'" The defendant's name is not "International Committee of *the* Young Women's Christian Associations *of Chicago.*" It was, in fact, only the four descriptive words, "Young Women's Christian Associations." It does not purport to be *the* committee of any association, but of associations generally. The names are not, therefore, the same, or so similar as to be mistaken for each other. As we said in *Elgin Butter Co.* v. *Elgin Creamery Co.* 155 Ill. 127: "Ordinary attention will enable any one to distinguish between them." Section 2 of the act concerning corporations (Hurd's Stat. 1899, p. 434,) was not, therefore, violated by the Secretary of State in granting the license to the defendant to organize its society under its corporate name.

The complainant had no exclusive right to the use of the generic name "Young Women's Christian Association." (*Employers' Liability Assurance Co.* v. *Employers' Liability Ins. Co.* 16 N.Y. Sup. 396; *Farmers' Loan and Trust Co.* v. *Farmers' Loan and Trust Co. of Kansas,* 2 id. 296; *Goodyear India Rubber Glove Manf. Co.* v. *Goodyear Rubber Co.* 128 U. S. 598; *Bolander* v. *Peterson,* 136 Ill. 215.) The cases do not always distinguish between trade-marks and trade names, but there is no exception to the rule that no individual or corporation can appropriate a name composed of ordinary descriptive words, which may with equal truth be used by any other individual or corporation to designate its business, its character or its purposes.

That a generic name or words cannot be appropriated by a later corporation for the purpose of defrauding an earlier one is conceded, and the cases cited in the foregoing opinion go to that extent, and no farther. *Croft* v. *Day,* 7 Beav. 84, is a leading case on that doctrine, and is referred to in both *Goodyear India Rubber Glove Manf. Co.* v. *Goodyear Rubber Co.* and *Elgin Butter Co.* v. *Elgin Creamery Co. supra.* In the former, after holding that the name "Goodyear Rubber Company" was not one capable of exclusive appropriation, etc., it was said: "The case at bar

cannot be sustained as one to restrain unfair trade. Relief in such cases is granted only where the defendant, by his marks, signs, labels or any other way, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacturer, to the injury of plaintiff,"—citing, among other cases, that of *Croft* v. *Day, supra;* also, *McLean* v. *Fleming,* 96 U. S. 245. In the *Elgin Butter Co. case,* after holding that the Elgin Butter Company could not acquire such property in the words "Elgin Butter and Creamery" as to prevent a subsequently formed corporation from using its corporate title, in the absence of fraudulent conduct calculated to lead the public to understand that the corporations were one and the same, and after saying: "The gist of the complaint seems to be that the use by the Elgin Creamery Company of its corporate name in its business of manufacturing, dealing in and selling butter has a tendency to, and does, confuse and mislead dealers in the market and the public at large, and lead them into the false belief that the corporation incorporated as 'Elgin Creamery Company' is one and the same with the corporation incorporated as 'The Elgin Butter Company.' The bill proceeds upon the theory that the name 'The Elgin Butter Company,' and the claimed addition thereto of the words 'Proprietor of the Elgin Creamery Company,' are the trade name and trademark of complainant, and that it has the exclusive right and property in both said corporate name and said addition, and that no other person or corporation has a legal right to combine the word 'Elgin' with either the word 'butter' or the word 'creamery' in conducting his or its business,"—we used the following language: "Even if the corporate names of the two corporations are somewhat similar, yet, in the absence of any intent, act or artifice to mislead dealers in the market or the public at large as to the identity of the corporations, the Elgin Creamery Company has the same right to use its corporate name

in the transaction of its business that the Elgin Butter Company has to use its corporate name. It would seem that the same rule should apply to corporations in this regard that obtains in respect to natural persons, and in the absence of any fraudulent or wrongful intention or act, or any contract to prohibit it, every natural person has the absolute right to use his own name in his own business." (*Meneely* v. *Meneely*, 62 N. Y. 427.) Certain cases are then referred to, among others, *Croft* v. *Day, supra*, which are distinguished upon the ground that "in each of those cases there was present the element of fraudulent acts and intent."

The distinguishing feature of the *Croft case*, as well as each of the other cases cited in the majority opinion, is, in the language of Lord Langdale, "the fact of the defendant's using those names in connection with certain circumstances and in a manner calculated to mislead the public, and to enable the defendant to obtain, at the expense of Day's estate, a benefit for himself to which he is not, in fair and honest dealing, entitled." The bill in this case does not charge that the defendant has at any time, by words or conduct, represented itself as being the complainant or in any way connected with it, nor does the proof tend to establish any such state of case. It is no longer contended that the complainant has the right to appropriate to its own exclusive use the words "Young Women's Christian Association," and yet the defendant is to be perpetually enjoined from using those words in its name without proof of its having done anything except to carry on the charitable work for which it was incorporated.

In my opinion there is nothing in this case calling for the interference of a court of equity, and the chancellor properly dismissed the bill.

Mr. JUSTICE CARTER: I concur in the dissenting opinion of Mr. Chief Justice WILKIN.