### METROPOLITAN OPERA ASS'N, Inc. v. ### METROPOLITAN OPERA ASS'N OF ### CHICAGO, Inc., et al. ### Civil Action No. 48 C 301.

United States District Court
N. D. Illinois, E. D.

Dec. 2, 1948.

128

George I. Haight, of Chicago, Ill., for plaintiff.

David A. Bridewell, of Chicago, Ill., for defendants.

HOLLY, District Judge.

Plaintiff, a New York corporation, filed its complaint seeking to restrain defendant from using its corporate name.

There is little controversy as to the facts. Plaintiff and its predecessor, an unincorporated association, have for over sixty years been giving operatic performances of the highest quality. These productions have been given at its home, the Metropolitan Opera House in New York and, for several years after its New York winter season was finished, it has given operatic performances in various cities including Philadelphia,

Washington, Hartford, Albany, Boston, Baltimore, Cleveland, Chicago, Atlanta, New Orleans, St. Louis, Milwaukee and Dallas. It has also conducted Saturday afternoon broadcasts over a nation wide net work presenting grand opera with singers of international fame. Its operatic performances are given under the name Metropolitan Opera Association and it and its performances are referred to generally throughout the country as "Metropolitan Opera," "Metropolitan" and the "Met" and those names have become identified in the public mind with the plaintiff and its productions.

Plaintiff charges a fee for attendance upon its performances, but that income is not sufficient to sustain it and it relies heavily upon volunary contributions from music lovers all over the country including Chicago and Illinois.

In its operatic and radio productions plaintiff has presented singers and conductors of world wide fame so that in the United States and to an extent in Europe it is considered the greatest opera company in the world.

Defendant is an Illinois corporation organized in June, 1947. It adopted the name it now bears, the testimony shows, after first choosing the name Illinois Opera Association, Inc., but when the incorporators filed their petition with the Secretary of State they were informed that the name had already been adopted by another corporation. Some conversation was had with a clerk in the office of the Secretary of State who suggested the name Metropolitan. The suggestion was accepted, the petition amended and articles of incorporation issued giving the name defendant now bears.

Defendant's organization was promoted by one Nicola Berardinelli, a baritone singer, who has been successfully teaching music in Chicago for some years and who had a good reputation both as a singer and pedagogue. He does not propose to put on operatic performances on the scale of those of plaintiff but rather, as he says, aims to have one star for each performance, the remainder of the cast to consist of pupils of his or other teachers, thus giving the members an opportunity to qualify as operatic singers and obtain engagements in other and per-

haps greater companies, possibly even with plaintiff. At present he has no intention of giving performances other than in Chicago and other Illinois towns.

The evidence clearly shows that the terms Metropolitan or Met when used in connection with opera has acquired a secondary meaning and is held generally to mean the plaintiff; that the use of the name by the defendant in giving opera will cause confusion and amount to a fraud on the public. It may be that defendant has no conscious intent of defrauding but that will be the result whether intentional or unintentional.

Defendant contends that plaintiff as a foreign corporation may not restrain its use in Illinois of the corporate name the State has conferred upon it; that plaintiff will not be injured by defendant's use of the name because, while plaintiff relies in part upon contributions from persons interested in opera and upon receipts from performances given in cities other than New York, contributions from Chicago have been negligible for several years and for the past two years no performances have been given here nor is there any evidence that any will be given; and that relief such as prayed by plaintiff is granted only where one is "palming off" his goods as those of another, to the financial injury of the other. Confusion of the public, it is urged, without financial hurt gives one no standing in a court of equity. Further they contend that Metropolitan is a generic and descriptive term of which plaintiff cannot have exclusive use.

First: Does the fact that Metropolitan Opera Association of Chicago is the name obtained by defendant as its corporate name preclude the relief prayed by plaintiff? To sustain its contention that a foreign corporation may not contest defendant's right to this name defendant relies upon Hazelton Boiler Co. v. Hazelton Tripod Boiler Company, 142 Ill. 494, 30 N.E. 339.

Hazelton Boiler Company, a New York corporation, successor to a partnership bearing that name and to which the good will of the partnership had been assigned, brought its action to restrain defendant, an

Illinois corporation, and certain individual defendants including one Milton W. Hazelton, from using its, defendant's, corporate name, Hazelton Tripod Boiler Company, the name, "Hazelton Boiler" or the name Hazelton in their business of manufacturing and selling boilers. Milton Hazelton had invented the boiler manufactured by the plaintiff and for a time had been a partner in the firm manufacturing it in New York but later sold his interest in the firm to his other partners. He came to Illinois and with others commenced the manufacture and sale of a boiler to which they gave the name Hazelton. Neither concern put its boiler on the market but confined its business to customers who purchased for their own use and all sales by each corporation were made on orders directed to either the New York or Chicago offices as the case happened to be. The Illinois corporation was created prior to the time the New York partners became incorporated.

The Supreme Court held that there were two obstacles to the relief sought by the complainant, the first growing out of the fact that complainant was the junior corporation seeking to restrain the latter from the use of its corporate name, and the second arising from the position of the complainant as a foreign corporation seeking to contest with a domestic corporation the right of the latter to the corporate name "given it by the sovereignty which created it." Further the court said that "complainant is in the attitude of a foreign corporation coming into this state, and seeking to contest the right to the use of a corporate name which this state, in furtherance of its own public policy and in the exercise of its own sovereignty, has seen fit to bestow upon one of its own corporations. For such a purpose a foreign corporation, ordinarily, at least, can have no standing in our courts." [142 Ill. 494, 30 N.E. 343.]

In reaching this conclusion the court wholly ignored the realities of the situation. It spoke of the creation of a corporation as though at that time a corporation was created by a special act of the legislature granting a special franchise. How corporations are really created and receive their names is illustrated by the case at bar. Certain individuals, under the provisions of a general statute, file the required documents in the office of the Secretary of State selecting a name of their of own choosing, subject only to the exception hereinafter noted, and the Secretary of State, if the documents are in form and the parties have done the things required by the general statutes, issues a charter creating the corporation. In Illinois the statute provides only that the name shall not be deceptively similar to that of another corporation organized under or licensed to do business under the laws of this state. In this case the incorporators of defendant originally chose a name, Illinois Opera Company, deceptively similar to the name of another Illinois corporation, whereupon a minor clerk in the office of the Secretary of State unidentified by any witness suggested the name defendant now bears. It would be straying far from fact to say that the name was bestowed by the state "in furtherance of its own public policy and in the exercise of its own sovereignty."

It might be thought that the court by the flat statements it made concerning an attempt of the New York corporation to restrain the use by the Illinois company of its corporate name meant that under no circumstances could a foreign corporation restrain the use by an Illinois company of its corporate name. But I do not think such a conclusion necessarily follows. The Court found that there was no attempt by the Illinois corporation to palm off its goods as the goods of the New York concern, nor, considering the way the businesses were conducted by the parties, could there be any confusion in the minds of prospective purchasers as to which of the companies they were dealing with. This I think was the controlling circumstance in the case and upon which the decision was based. It was because there was no palming off of the goods of the defendant for those of the plaintiff that the court denied relief. And the palming off doctrine is now dead in Illinois. This subject will be further discussed later in this opinion.

But even if the Hazelton case might be construed as holding that a foreign corporation could never successfully contest the right of an Illinois corporation to use in Illinois the name set out in its charter of in-

corporation, I do not think that is the law in Illinois now. If a corporate name is still to be regarded as a name conferred by the state in furtherance of its own public policy and the exercise of its sovereignty, certainly no court would have the authority to restrain the corporation from using that name. Yet in International Committee of Y. W. C. A. v. Y. W. C. A., 194 Ill. 194, 62 N.E. 551, 56 L.R.A. 888, the court enjoined the use by an Illinois corporation the name under which it was incorporated. The facts were as follows:

The plaintiff Young Women's Christian Association of Chicago, a corporation, was one of a large number of associations, some incorporated and some not, which had operated in their respective localities under the names of "Women's Christian Association" or "Young Women's Christian Association" and which affiliated with one another through biennial conferences known as "The International Conference of Women's Christian Associations of the United States and British provinces," the conferences being composed of delegates from the local organization. The object of the local organizations was the promotion of the religious, moral and temporal welfare of young women, and plaintiff maintained boarding houses, free medical dispensaries, a library and employment agency, etc., and was maintained in part at least, by contributions of money and goods by persons interested in its work.

Differences arose in the conference as to whether local associations should be permitted representation in the conference unless the constitution of the local association provide that voting membership in the local should be restricted to members in good standing in an evangelical church. When a proposal for such restriction of representation was voted down some of those who favored it withdrew and a new organization was formed and incorporated under the laws of the State of Illinois under the name "International Committee of Young Women's Christian Associations." Local organizations were formed, two in Chicago, one bearing the name "North Chicago Young Women's Christian Association" and another "The West Chicago Young Women's Christian Association." Much confusion,

the court found, had arisen from the similarity of the names and the Supreme Court sustained the action of the Appellate Court, 86 Ill.App. 607, directing the Superior Court to grant a perpetual injunction from using its corporate name, or any colorable imitation thereof.

The court found no difficulty in holding that the defendant might be enjoined from using the corporate name bestowed by the State of Illinois. The theory on that subject advanced in the opinion in the Hazelton case can no longer be considered law in Illinois.

**Second:** It is urged by counsel for defendant that the plaintiff will not be injured by the operations of the defendant and therefore the injunction prayed by plaintiff is not the determining factor.

It is true that in the Hazelton case the court, as it seems to me, held plaintiff was not entitled to relief almost entirely upon the fact that the manner of dealing by the parties was such that neither corporation was likely to get business intended for the other, that defendant corporation did not attempt to "palm off" its boilers as those of plaintiff. And the Circuit Court of Appeals of this circuit in Borden Ice Cream Co. v. Borden Condensed Milk Co., 7 Cir., 201 F. 510, 513, speaking through Judge Carpenter, said:

"It has been said that the universal test question in cases of this class is whether the public is likely to be deceived as to the maker or seller of the goods. This, in our opinion, is not the fundamental question. The deception of the public naturally tends to injure the proprietor of a business by diverting his customers and depriving him of sales which otherwise he might have made. This, rather than the protection of the public against imposition, is the sound and true basis for the private remedy. That the public is deceived may be evidence of the fact that the original proprietor's rights are being invaded. If, however, the rights of the original proprietor are in no wise interfered with, the deception of the public is no concern of a court of chancery. American Washboard Co. v. Saginaw Mfg. Co., [6 Cir.], 103 F. 281, 43 C.C.A. 233, 50 L.R.A. 609.

"Doubtless it is morally wrong for a person to proclaim, or even intimate, that his goods are manufactured by some other and well-known concern; but this does not give rise to a private right of action, unless the property rights of that concern are interfered with. The use by the new company of the name 'Borden' may have been with fraudulent intent; and, even assuming that it was, the trial court had no right to interfere, unless the property rights of the old company were jeopardized. Nothing else being shown, a court of equity cannot punish an unorthodox or immoral, or even dishonest, trader; it cannot enforce as such the police power of the state."

But even then the "palming off" theory was not accepted by other Circuit Courts of Appeal. See British American Tobacco Co. v. British-American Cigar Stores, 2 Cir., 211 F. 933, Ann.Cas.1915B, 363, and it has been abandoned by both the Circuit Court of Appeals of this Circuit, Consumers Petroleum v. Consumers Co. of Illinois, 7 Cir., 169 F.2d 153, and by the Supreme Court of Illinois.

In International Committee of Y. W. C. A. v. Y. W. C. A., supra, the court said, 194 Ill. page 198, 62 N.E. page 552, 56 L.R.A. 888:

"The object, work, sources of support, and field of labor each being substantially the same, and the name of appellee having been adopted and in use by it many years prior to the incorporation of the appellant, the appellant had no right to adopt as its corporate name one so similar to that of appellee, or to incorporate in its name words which would indicate to the public that it was the representative of appellee and the conference with which appellee is affiliated."

And again, 194 Ill. page 201, 62 N.E. page 553:

"We are of the opinion the appellate court properly held that the name of the appellant is so similar to the name of appellee and so arranged as to deceive and mislead the public into believing that the appellant is the appellee, or a committee or representative of appellee and the conference with which it affiliates, and properly directed the superior court to grant a perpetual injunction against the appellant restraining it from using the name 'International Committee of Young Women's Christian Associations,' or any colorable imitation thereof, etc., as prayed for in said original and supplemental bills."

It was not because of expected financial loss to the plaintiff that the court enjoined the use by defendant of its corporate name, but the likelihood of the public being misled.

In Lady Esther, Ltd., v. Lady Esther Corset Shoppe, 317 Ill.App. 451, 46 N.E.2d 165, 167, 148 A.L.R. 6, plaintiff manufactured and sold cosmetics only while defendant's business was limited to the sale of corsets, brassieres, pocket books, costume jewelry and ladies wearing apparel. The parties were not business competitors. Defendant contended that Illinois adhered to the "palming off rule," that where there was no competition there could be no palming off and that as there was no competition between the parties plaintiff was not entitled to an injunction restraining it from using the name it had adopted, but the court held that the authorities were "far from saying that the courts will not grant injunctive relief where the defendant's conduct is likely to cause confusion of the traders so that the public believes or is likely to believe that the goods of the defendant are the goods of the plaintiff, or that the plaintiff is *in some way connected*." (Emphasis mine.)

In Investors Syndicate of America v. Hughes, 378 Ill. 413, 38 N.E.2d 754, 758, plaintiff which had been doing business in Illinois for many years, its relations with its clients being highly satisfactory and no investment with it having been lost, concluded to carry on its further business in Illinois through a subsidiary corporation, and filed an application seeking a certificate of authority for the subsidiary to do business in Illinois under the name Investors Syndicate of America. The Secretary refused on the ground that the name of the subsidiary was deceptively similar to that of the parent company and persons dealing with the subsidiary might be confused and imagine they were dealing with the parent company. Plaintiff argued that the purpose of the provision of the statute prohibiting the use of a "deceptively similar" name by a foreign corporation seeking to do business in the

state was solely for the purpose of preventing unfair competition, but the court held that "it is obvious both from the stand point of the public policy and from the construction of the statutes involved, that such a statute has the dual purpose of protecting competing corporations, and likewise the public, from deception in the use of deceptively similar corporate names."

Further in its opinion the court said that in many decided cases the court had refused to consider the question of fraud or imposition on the public but also called attention to the fact that the recent trend had been to place less emphasis on unfair competition and more on confusion, citing Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509; Aunt Jemina Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039.

 Here the use of the name Metropolitan by defendant is quite likely to lead the public to believe that defendant's organization is in some way connected with or is sponsoring the plaintiff. For the evidence clearly shows, in fact it is not disputed, that the name "Metropolitan" and its abbreviation "Met" when used in connection with opera are universally understood throughout the United States and in Europe also, to refer to the Metropolitan Opera Company of New York. If defendant should be able to develop a strong organization and put on opera with a competent cast as its charter authorizes it to do, it would be in direct competition with and might seriously injure plaintiff financially. If on the other hand defendant should limit its activities, as its promoters say they intend, to small companies composed of one or two competent performers with the rest of the cast composed of students of the promoter, the public may well be confused and deceived into attending performances much inferior to that which they expect, believing they are attending opera given by plaintiff.

Of course that part of the public which is experienced in and has special knowledge of musical affairs may not be deceived but that is a small part of the public, even of that part of the public which likes and occasionally attends good musical performances.

Defendant also argues that the word metropolitan is a purely descriptive term and that plaintiff could not secure exclusive right to the use of it. But it has been used by plaintiff and its predecessor unincorporated association for over sixty years so that now everywhere that name when used in connection with opera is associated with plaintiff and is understood to refer to plaintiff. It has acquired a secondary meaning so far as opera is concerned and may not be used by defendant or others as a name for an operatic or perhaps any other musical organization.

Defendant's promoter appears to be a singer of exceptionable gifts and an unusually capable teacher. His effort to promote opera and help younger singers to become capable of and acquiring higher places in the musical world is laudable. It will be good if he can organize a company which can give acceptable performances at lower prices, even though much below the standard of those of plaintiff. Such an organization as he proposes may be the means of extending appreciation of good music in Chicago.

The denial to defendant of the name Metropolitan need not interfere with these plans. They can just as well be carried out under another name that will not tend to mislead or confuse the public.

Plaintiff is entitled to an injunction restraining defendant from the use of the name Metropolitan and judgment will be entered accordingly.