WILLIS, BEN C., Associate Judge.
This is an interlocutory appeal from an order sustaining motions to dismiss one count of plaintiff’s complaint. The complaint contains a second count which was also attacked in the same motions which the chancellor denied as to such count. This appeal does not involve the second count or the action of the chancellor denying the motions to dismiss it.
The sole question is whether or not the first count (or Count I, as it is designated in the order) contains allegations which set forth a cause of action in behalf of plaintiff against the several defendants. We deem that it does and that the chancellor was in error in granting the motions to dismiss it.
According to the facts set forth in Count I which must be treated as true by the chancellor and this court, the plaintiff owns and operates in Jacksonville a telephone secretarial bureau under the trade name of “Telephone Answering Service”. It is further alleged that such “bureau” has been operating under this trade name since 1946 and has been successful in establishing an extensive and substantial reputation in the community by reason of honest and efficient operation of the business. It is also said that plaintiff’s business had come to be recognized and identified by the trade name used, which also became associated with plaintiff’s good reputation in the minds of the members of the public. Other allegations detail the acts and attitudes of the defendants which are mentioned herein in the following paragraphs of this opinion.
Defendant, Answer Phone of Jacksonville, Inc., a Florida corporation, chartered in October, 1957, has since that time been engaged in the operation of a telephone secretarial bureau at 430 West Monroe Street *250 in Jacksonville. It has operated under a number of trade names which include designations as “Accurate”, “Acme”, “Bell Telephone”, “Duval”, “Florida Phone”, and “Jacksonville”, each followed by the words “Answering Service”. Other trade names have been “Attorneys’ Secretarial Bureau” and “Professional Telephone Secretarial Service”. This defendant will be referred to as the “defendant competitor”. The defendants Scarborough and McLeod are officers and agents of the defendant competitor. The other defendant, Southern Bell Telephone Company, a corporation, will be referred to as the “telephone company”. The latter supplies telephone service in Jacksonville and publishes the telephone directory which also contains display advertisements of its subscribers.
At the time plaintiff’s predecessor, her late husband, adopted the trade name “Telephone Answering Service” in connection with the telephone secretarial bureau, the words of the trade name were not being used by anyone in the Jacksonville area. The plaintiff and her late husband spent much in advertising this trade name and acquainting the Jacksonville public with the services offered by the business. Because of this advertising, the trade name became identified in the minds of the members of the public with the high quality of secretarial services offered by plaintiff’s business. It is said that the words of the trade name acquired a secondary meaning in the Jacksonville area “in that they have become and are generally accepted as words identifying the business presently operated by plaintiff”.
The defendant competitor and its officers and agents named as defendants, knowing the secondary meaning of plaintiff’s trade name, published and distributed certain advertising “designed to infringe and capitalize on the good name and reputation” of plaintiff. It is alleged that such was done “with the intention and purpose of defrauding the public and injuring plaintiff and her business’’ and that it was “further designed to mislead the public into believing” that the services offered by the competitor defendant are those of the plaintiff.
In September, 1958 the defendant competitor and the named defendant officers and agents of the competitor caused to be published in the telephone directory distributed at that time the following advertisement :
Telephone
Answering Service
24 Hour Service
430 W. Monroe El-39631
They also published in newspapers in Jacksonville, including the issues of the Florida Times-Union of August 29 and 30, 1958, the following advertisement:
Telephone Answering
Service Ph. El 6-2462
The telephone company caused the advertisement in its telephone directory mentioned above to be published “with full knowledge of the intention and purpose of [the other] defendants to defraud the public and injure the plaintiff as aforesaid”. It is said that this was done by the telephone company after it had been notified by the plaintiff that such publication would infringe on plaintiff’s trade name.
Prior to September, 1958, the telephone company had listed in the classified portion of its directory the plaintiff and her competitors under the classification as “telephone secretarial bureaus”. However, in September, 1958 this classification designation was changed to “telephone answering service”. Such change in classification title is alleged to have been made by the telephone company “for the purpose of aiding and abetting [the other] defendants — in the accomplishment of their intention and purpose to defraud the public and injure plaintiff.”
It is further alleged that the telephone directory and newspaper advertisements *251 "have confused the public and mislead members of the public to believe that the services offered by” defendant competitor are the services offered by plaintiff’s business since 1946.
There are allegations of loss of income and profits on business she would have received except for the alleged actions of defendants and also that plaintiff has been forced to spend much in advertising “in an ..endeavor to counteract the confusion and false impression” created by the defendants’ advertising. It is said that “such false, fraudulent and misleading advertising by the defendants” will cause irreparable damage and loss of business to the plaintiff.
Injunctive relief and money damages are ■sought.
We have italicized those quotations from the complaint which we deem of particular significance and which we conclude render ■Count I of the complaint invulnerable to motion to dismiss.
The defendants below (appellees here) ■contend that the plaintiff has no right to appropriate to her use the words “telephone answering service” as a trade name because these words are merely descriptive of the services offered to the public by the plaintiff.
It is undoubtedly true that generic terms or mere descriptive words are not ordinarily susceptible of exclusive appropriation by an individual as a trademark or trade name. Such terms are deemed to be the common property of the public, and thus available to be used by anyone engaged in offering goods or performing the services which the terms describe. 52 Am.Jur. 545 (Art. 60, Trademarks, Tradenames and Trade Practices); Annotation, 66 A.L.R. 948, 957; Merchants’ Detective Ass’n v. Detective Mercantile Agency, 25 Ill.App. 250; Diamond Drill Contracting Co. v. International Diamond Drill Co., 106 Wash. 72, 179 P. 120.
However, it is recognized that even generic words and terms may, by usage, acquire a secondary, special or trade meaning as indicating or identifying the goods, business or services of the user, as distinguished from its common or general meaning. In such cases the user is,entitled to protection against subsequent unfair or piratical use of such words or terms by another. 52 Am.Jur. 554 (Sec. 72, Trademarks, Trade-names, etc.) Also when such a secondary meaning has been acquired by a user, a subsequent user is under a duty to take such precautions as may be necessary to distinguish or identify his goods or business and thus avoid confusion on the part of customers or patrons. 52 Am.Jur. 604 (Sec. 130, Trademarks, Tradenames, etc.).
The fraudulent use of such generic terms or words for the purpose of enticing patrons or customers to accept the goods or services of the later user in the belief that they are those of the prior user is also unlawful. 52 Am.Jur. 604-5; International Committee of Young Women’s Christian Ass’n v. Young Women’s Christian Ass’n of Chicago, 194 Ill. 194, 62 N.E. 551, 56 L.R.A. 888.
The words “telephone answering service” are a descriptive or generic term which cannot be exclusively appropriated by any user in Jacksonville or elsewhere. When the plaintiff selected such a trade name, it was with knowledge that a competitor might use all or any part of that phrase in its trade name or advertising. However, the allegations of Count I of the complaint are adequate to set forth the acquiring of a secondary meaning by the plaintiff’s trade name to the extent that those descriptive words had come to be regarded by the public as .referring to plaintiff’s business and services. This would cast upon a later user, such as the competitor defendant, the obligation to take the necessary precautions to distinguish and identify its services from those of the plaintiff. The allegations in Count I set forth facts that such precautions were not taken, that the defendant competitor, in using the terms, had confused the public and patrons *252 and that such had injured the plaintiff. Furthermore, it is alleged that the use by the competitor defendant of the descriptive words in the manner alleged was with intent to defraud the public and injure the plaintiff and were designed to deceive the public as to who would perform the services advertised.
With regard to the telephone company, the allegations assert that it published the competitor defendant’s advertisement in its directory with full knowledge of the purpose of the advertiser to defraud the public and injure the plaintiff. We are not prepared to hold that this alone would render the telephone company liable, as it cannot be held to the duty of policing its advertiser’s motives or to resolve disputes between an advertiser and its competitor. However, other allegations set forth that the telephone company changed its classification titles in its directory, in the manner alleged, for the purpose of aiding and abetting the other defendants in the accomplishment of their intention and purpose to defraud the public and injure plaintiff. These clearly would state a claim upon which relief could be granted against the telephone company.
The allegations are sufficient to state a cause of action against the individual defendants, as they are alleged to have acted with the competitor defendant and for the same purposes.
Our views expressed here are in harmony with Quality Courts United v. Jones, Fla., 59 So.2d 20 and Florida Ventilated Awning Co. v. Dickson, Fla., 67 So.2d 215.
The appellees cite us Goodyear’s India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 9 S.Ct. 166, 32 L.Ed. 535; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (the shredded wheat case); Diamond Drill Contracting Co. v. International Diamond Drill Contracting Co., supra. These cases and others cited by appellees support the rule that a user of a generic term may not acquire an exclusive right to use the term in connection with its business. However, it is recognized that such a term may acquire a secondary meaning and the prior user is due reasonable precautions from subsequent users to avoid confusion which would damage him. In the Kellogg case, supra, the Court held that National Biscuit Company had failed to establish that the term “shredded wheat”' in the minds of the public had the primary significance of the producer and not the product. For this reason it held that National Biscuit was not entitled to the exclusive use of the term, but added that the subsequent user of the term, Kellogg,, would be required to “use reasonable care to inform the public of the source of its product.” [305 U.S. 111, 59 S.Ct. 113.]
For the reasons stated, the order appealed from is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.
Reversed.
WIGGINTON, C. J., and CARROLL, DONALD, J., concur.