THE PEOPLE *ex rel.* James S. Felter *et al.*

*v.*

JAMES A. ROSE.

*Opinion filed February 21, 1907.*

1. NAMES—*corporation has property right in its name.* A corporation, whether organized for pecuniary profit or not, has such a property right in its corporate name as will be protected by a court of equity by enjoining the use by another company of the same name or of one so similar as to mislead the public.

2. MANDAMUS—*mandamus will not be issued in a doubtful case.* The writ of *mandamus* will only be issued where there is a clear legal right to be performed or a duty which ought to be enforced.

3. SAME—*when mandamus will not be issued to compel Secretary of State to issue certificate of incorporation.* Mandamus will not be awarded to compel the Secretary of State to issue a certificate of incorporation under the name of "National Liberty League" where there is another corporation already in existence under the name of "National Liberty Legion," since the effect of such course would be to mislead the public in dealing with such corporations.

WILKIN, J., SCOTT, C. J., and FARMER, J., dissenting.

ORIGINAL petition for *mandamus.*

JOHN D. GILL, for petitioner.

W. H. STEAD, Attorney General, for respondent.

Mr. JUSTICE VICKERS delivered the opinion of the court:

On August 14, 1905, the relators filed in the office of the Secretary of State a certificate, duly acknowledged and authenticated, for the organization of a corporation for benevolent, charitable, educational, musical, literary, scientific, religious, social and missionary purposes, and not for pecuniary profit, under the name of "National Liberty League," with its principal office at 26 VanBuren street, in the city of Chicago, and requested the Secretary of State to issue to it a certificate of organization, which he refused to do. Upon such refusal the relators filed their original petition in this court for a writ of *mandamus* to compel the issuing of said certificate.

By his return to the petition the Secretary of State alleged that long prior to the application of the relators to become incorporated in the State of Illinois under the name "National Liberty League," there was incorporated in Illinois a society by the name of "National Liberty Legion," with its principal office in the city of Chicago, and that said corporation is now active and doing business in said city; that the names "National Liberty League" and "National Liberty Legion" are so nearly identical, that should a corporation be organized under the name of "National Liberty League" it would result in confusion in keeping the records in the office of the Secretary of State and in the transaction of business by such corporation with the public and with that office; that the National Liberty Legion has acquired a proprietary right in that name of which it cannot be lawfully divested and in the enjoyment of which it may not be lawfully interfered with or obstructed; that the relators herein have caused to be incorporated under the laws of the District of Columbia a corporation under the name of "National Liberty League," and that corporation is now transacting business under the charter granted to it by the District of Columbia.

225—32

There is a great similarity between the names "National Liberty Legion" and "National Liberty League,"—so much so that one might easily be taken for the other in the distribution of mail and in the transaction of business with the public. The National Liberty Legion is already incorporated under the laws of Illinois and is doing business in the same city where the relator desires to establish its principal office. Having been incorporated under the name of "National Liberty Legion" it is entitled to protection in the use of that name, and the State should not license another corporation by the same name or one so similar that it might reasonably be taken for the other. A corporation has such a property right in its corporate name, whether organized for pecuniary profit or not, as a court of equity will protect by enjoining the use by another company of the same name or one so similar as to mislead the public. *International Committee Y. W. C. A. v. Y. W. C. A. of Chicago,* 194 Ill. 194, and cases there cited.

The writ of *mandamus* has always been regarded as one of the highest writs known to our system of jurisprudence, and it only issues where there is a clear legal right to be enforced or a duty which ought to be performed. It is never issued in doubtful cases. (*People v. Salomon,* 46 Ill. 415; *People v. Trustees of Schools,* 86 id. 613; *People v. Town of Oldtown,* 88 id. 202.) The award of this writ, even in cases where the relator has an undoubted legal right, is in the wise judicial discretion of the court. This doctrine was declared in the second *mandamus* case that was ever heard in this court. It was the case of *People ex rel. v. Forquer,* Breese, 104. It was there said by SMITH, J. (p. 120) : "If the right had been established as a perfect legal right, and it has been violated, our laws must afford a remedy. But in the case of a *mandamus* there are cases where this may have been shown yet the court will not grant the writ. It is certainly a sound legal principle that cases may arise where the court will not grant a *mandamus* when the granting

thereof will, in a collateral manner, decide questions of importance between persons who are not parties to the proceedings and have had no notice and opportunity to interpose their defense, or where it will be attended with manifest hardships and difficulties. And it has been further decided in the court of King's Bench, that courts are not bound to grant writs of *mandamus* in all cases where it may seem proper, but may exercise a discretionary power as well in granting as refusing, as where the end of it is merely a private right."

The above doctrine has never been departed from in this State but has often been reiterated. If this *mandamus* is awarded this court might be put in the absurd position of being required to sustain an injunction against the use of the name which it has compelled the Secretary of State, by *mandamus,* to authorize. The Secretary of State will not be required, by *mandamus* issuing out of this court, to issue a certificate of incorporation when it is plainly apparent that the effect will be to mislead the public in dealing with such corporation.

The writ will be denied.                    *Writ denied.*

WILKIN, J., SCOTT, C. J., and FARMER, J., dissenting:

When parties desiring to organize a corporation have complied with the several provisions of the statute it is made the duty of the Secretary of State to issue to them a certificate of incorporation. His discretion in the matter only extends to the determination of the questions whether or not those making the application have complied with the statutory requirements, and in this case, the proposed corporation being not for pecuniary profit, whether there is an existing one of the same name. Section 29 of chapter 32 (Hurd's Stat. 1905, p. 502,) provides that societies, corporations and associations not for pecuniary profit may be organized by three or more citizens of the United States who shall desire to associate themselves for any lawful purpose other than

for pecuniary profit, by their making, signing, acknowledging and filing in the office of the Secretary of State a certificate in writing, in which shall be stated the name or title by which such corporation shall be known in law, the particular persons and object for which it is formed, the number of trustees, directors or managers, and the names of the trustees, directors or managers selected for the first year of its existence. There is no question in this case but that the relators had fully complied with the requirements of this section. Section 30 then requires the Secretary of State to issue a certificate of the organization of the proposed corporation, making a part thereof all papers filed in his office in and about the organization thereof and duly authenticated under his hand and the seal of State, which shall be recorded, etc., and upon compliance with the foregoing conditions the corporation shall be deemed fully organized: *"Provided,* the Secretary of State shall not issue a certificate of organization to any corporation, society or association, under the name of any then existing."

It will thus be seen that the only limitation upon the power and duties of the Secretary to issue the certificate is, that the proposed corporation shall not be organized under the name of any then existing. This provision is construed in the foregoing opinion as authorizing a refusal to issue the certificate if, in the opinion of the Secretary of State, the name is not the same but "so similar" as to be liable to produce confusion in the transactions of the two corporations, and clothes him with the judicial power of deciding, in advance of the organization, whether or not such confusion will or may arise. His duties are purely ministerial, and he has no discretion except under the statute, as above stated. It is not claimed that the two names here in question are the same. The words common to both, "National Liberty," are merely descriptive of the names "League" and "Legion," which are of entirely different meanings, "League" being defined "as an alliance of persons," and

"Legion" as "a military body or organization." A court, when applied to for a peremptory writ of *mandamus*, may, no doubt, in the exercise of a sound judicial discretion, refuse the writ, even though on the face of the petition a clear right thereto is shown. But that is because of its judicial powers, whereas here the question simply is whether a ministerial officer shall be required to perform a plain statutory duty.

We think the foregoing sections of the statute relating to the organization of corporations not for pecuniary profit have been confused with section 2 of chapter 32, providing for the organization of corporations "for pecuniary profit." Prior to the amendment approved May 16, 1905, that section was similar in its provisions to section 30, *supra*,—that is, it simply provided that a new corporation should not be organized in the same name as that of one already in existence. By the amendment of May 16 it was provided that "no license shall be issued to two companies having the same or a similar name." It is fair to presume that the legislature intended by the added words "or a similar name," where the corporation is for pecuniary profit, to vest the Secretary of State with the discretionary powers which he attempted to exercise in this case and which the majority opinion holds he may exercise on application for a certificate of organization not for pecuniary profit. In our opinion it must be presumed that if the legislature had intended to limit the right of the parties to organize a corporation or society not for pecuniary profit to a name *similar* to one already in existence, it would have amended section 30, *supra*, at the same time that it amended the foregoing section 2. There is reason for the distinction, one corporation being for the transaction of business relating to pecuniary profit and the other having no such purpose. But whether that is true or not, we are unable to see how the Secretary of State can be authorized to read into the statute a qualification which the legislature has seen fit to omit.