THE RAILROAD AND WAREHOUSE COMMISSION, Appellee, vs. THE LITCHFIELD AND MADISON RAILWAY COMPANY, Appellant.

*Opinion filed February 17, 1915—Rehearing denied April 8, 1915.*

1. PRACTICE—*circuit court determines reasonableness of railroad commission's order from evidence heard in court.* The circuit court, in determining whether an order made by the Railroad and Warehouse Commission is lawful and reasonable, acts upon the evidence produced in that court, notwithstanding the statute provides that the order is *prima facie* reasonable and *prima facie* evidence of matters therein stated.

2. SAME—*proceeding in circuit court is not, in a legal sense, an appeal.* The proceeding in the circuit court to determine the reasonableness and lawfulness of an order made by the Railroad and Warehouse Commission is not, in a legal sense, an appeal, as there cannot be an appeal from the order of an administrative body, but the proceeding is merely a method for bringing into the court questions of property rights of which it has jurisdiction.

3. RAILROADS—*when contract between railroads should not be ignored in making order as to interlocking system.* While a contract between a railroad company and an interurban railroad company, under which the latter has installed, maintained and operated the simple derail device called for in the contract, does not preclude the Railroad and Warehouse Commission from making an order for a more perfect and complete system in the interests of public safety; yet the contract should not be entirely ignored.

4. SAME—*when order as to interlocking system is unreasonable.* Where a contract between a railroad company and an interurban railroad company requires the latter to install, maintain and operate, at its own expense, the simple derail device therein called for, it is unreasonable for the Railroad and Warehouse Commission, in making an order for a more complete and perfect interlocking system, to require the interurban company merely to install the system and the railroad company to thereafter maintain and operate it, where the evidence shows that the cost of maintenance and operation will be many times the cost of installation.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

WARNOCK, WILLIAMSON & BURROUGHS, and WILSON, WARREN & CHILD, for appellant.

267 - 22

Everett Jennings, (George M. Morgan, of counsel,) for appellee.

Graham & Graham, (George W. Burton, of counsel,) for the St. Louis, Springfield and Peoria Railroad Company.

Mr. Chief Justice Cartwright delivered the opinion of the court:

In 1889 the appellant, the Litchfield and Madison Railway Company, constructed, and has since maintained and operated, a steam railroad from a point one mile south of Litchfield to Madison. It has done, and still does, a freight business only, eighty-five per cent being transportation of coal from six coal mines along its line. In 1905 the St. Louis, Springfield and Peoria Railroad Company (which is also known as the Traction System) proposed the construction of an electric trolley line and laid out its road, crossing appellant's road about a mile south of Worden. On December 28, 1905, the appellant and the Traction System entered into a written agreement, by which the appellant granted to the Traction System permission to cross its right of way and tracks, and the Traction System agreed at its sole expense to construct, maintain and from time to time renew a derailing device at the crossing on each side of the track, subject to the approval of appellant, which would prevent its cars from going upon or over the right of way or track until the conductor should go entirely across the track and throw a lever located there, and that before attempting to cross the track it would bring its cars to a full stop at a safe distance therefrom and would not depend on any safety or clearance signals or want of danger signals from appellant, and before throwing the lever or attempting to cross the conductor should ascertain positively that the right of way and track of appellant were clear and could be safely crossed. The Traction System

constructed its railroad in 1906 and constructed the derailing device as agreed and operated the same in accordance with the contract from that time. On February 10, 1913, the appellee, the Railroad and Warehouse Commission, issued a citation directed to the two corporations, requiring them to appear and show cause why they should not unite in providing a crossing with such safety appliances, devices and machinery as might in the judgment of the commission be thought requisite for the proper protection thereof. The appellant filed its answer, offering no objection to the proper safeguarding of the crossing, but setting up the contract and insisting that the plan and device adopted should be free of expense to it. The answer also alleged that the appellant operated not to exceed four trains each day over the crossing while the Traction System used the crossing with forty trains each day. There was a supplemental answer that during the previous month of December appellant used the crossing ten times each day, and in the month of May, 1913, it was used by appellant four times each day. The Railroad and Warehouse Commission adopted a plan proposed by the Traction System for the construction of a small tower or cabin, in which should be located levers for the operation of derails on both tracks and the installation of signals on both tracks. A majority of the commission, one member dissenting, made an order that the Traction System should install the device, and that when the same was so installed and approved by the commission it should be operated by appellant and at its expense. The tower-man or lever-man was to be a trainman connected with the train of appellant using the crossing, and it was ordered that the derails and signals of the Traction System should be normally clear, allowing its trains to pass over the crossing without stopping, and those of appellant should be normally at danger, requiring its trains to stop. The commission found as a fact and recited in the order that during the greater portion of the day there was a train over

the road of the Traction System about every thirty minutes and a train over appellant's road not more than once in three hours, and it was held that the contract was binding upon the parties, but so far as it interfered with service to the public the commission was not bound to recognize it. From that order an appeal was taken to the circuit court of Sangamon county, as provided by section 35 of the act of 1911 amending the act establishing the Railroad and Warehouse Commission. (Laws of 1911, p. 471.) That section provides that the matter shall be tried in the circuit court according to the rules relating to the trial of chancery suits so far as the same are applicable, and the court referred the cause to the master in chancery to take the evidence and report the same with his conclusions of law and fact. The master took the evidence and reported the same with his conclusion of law that the decision of the commission was final unless the evidence was conclusive that the order was arbitrary and unjust, and with the conclusion that the order was lawful and was reasonable as a matter of fact. The court heard the cause on exceptions to the report, and entered a decree finding that the master in chancery erred in holding the decision of the commission to be final unless the evidence was conclusive that the order was arbitrary and unjust, and stating the true rule to be that it was the province of the court to determine, from the evidence produced in court, whether the order appealed from was lawful and reasonable. The court found that the order was reasonable and lawful and it was affirmed, and this further appeal was prosecuted.

The circuit court was right in the conclusion that the question whether the order of the commission was lawful and reasonable was to be determined from the evidence produced in the court. The statute does not contemplate that the circuit court shall review the record of the commission or the evidence before the commission for error, since it provides only for filing a certified copy of the

pleadings and order. The judicial proceedings begin with the filing of the certified copy, although by the statute the order is *prima facie* reasonable and *prima facie* evidence of the matters therein stated. The court does not exercise appellate jurisdiction in such a case, and there is no such thing as an appeal, in a legal sense, from the order of an administrative body like the commission. The appeal provided for is a method of procedure for bringing before the court questions of property rights of which it has jurisdiction. (*City of Aurora* v. *Schoeberlein,* 230 Ill. 496.) The court is to determine from the evidence whether the order is lawful and reasonable, and if it is, it is to be affirmed, but otherwise it is to be vacated and set aside.

The appellant made no objection before the commission or in the circuit court, and makes none now, to the installation of the interlocking device as proposed, but contends that it was not lawful or reasonable to entirely ignore the contract, reverse the obligation created and impose the entire expense of operating the device upon it. The Traction System proposed the device adopted and made no objection to bearing the expense of it, so that all questions of installing the device are out of the way. The parties agree that the system provided for by the contract might lawfully be found insufficient for the public safety and that the commission might order a more complete and perfect system installed and operated.

The following facts were proved: The plan adopted provided for derails located 303 feet each side of the crossing. There was to be a cabin or tower at the crossing, containing levers to operate the signals and derails. The coal trains of appellant each contained about forty cars, and those going south were loaded while the north-bound trains were practically empty, and the appellant used the crossing on an average of five times a day. A train approaching the crossing would have to stop as much as 350 feet from it, the derail being 303 feet from the crossing. The train-

man who would operate the interlocking device would get off the train, walk to the crossing, unlock the cabin or tower, change the position of the signals and derails set for the trains of the Traction System, and the train would then pass over the crossing until the last car had passed the derail on the other side. The trainman would then change the derails and signals to leave the track clear for the cars of the Traction System, lock the door and go back to his place on the train. If he was a head-brakeman he would walk from the train to the cabin, and after operating the device he would walk to the derail and then along the right of way to the head of the train of forty cars to his position, since it would be impossible to walk over loaded coal cars. If the trainman was a rear-brakeman there would be the same time consumed and the same amount of walking involved. The evidence for the appellant was that the cost of each stop for a loaded train would be $1.08 and for a train not loaded 83 cents, based on the wages of the train crew during the time occupied, the amount of coal and water consumed and other elements necessarily involved. There was evidence by the Traction System that the expense would not be nearly so great, but the witness clearly misjudged the time involved. According to the evidence for the appellant the cost, capitalized at five per cent, would amount to $34,000, and upon any theory deducible from the evidence it would amount to half of that sum, while the cost of installing the system would be $4200. While under the contract the Traction System was required to stop its cars and attend to the crossing, by the new plan the cars would not stop, there would be no inconvenience whatever, and it would not be necessary to give the interlocking device any attention except to see that the derail and signals showed the crossing to be clear.

The contract was binding upon the parties when made, but in the judgment of the commission the plan thereby provided was not sufficient for the protection of the pub-

lic, and a plan was adopted which involved much additional expense not contemplated by the parties. The public welfare was not affected, one way or the other, by the question which corporation should bear the expense, the public interest involved relating only to having the safety device installed and operated. The contract did not contemplate such an interlocking device as was determined upon by the commission, and it cannot be said that the Traction System would have entered into a contract to install and operate such a device to avoid the expense or delay of necessary proceedings to obtain the right to cross appellant's right of way and track. The contract was made on a sufficient consideration, and contemplated that the appellant should be able to run its trains over the crossing at all times without stopping, while the Traction System was to stop its cars and operate the comparatively simple device which was agreed upon, and the contract could not, in justice to the appellant, be entirely disregarded by giving the Traction System all the benefit of the improved device and imposing all the burden on the appellant. If there had been no contract there should have been an equitable division of the cost of installing the device, and we cannot say that the order requiring the Traction System to bear the expense of installing it in lieu of the obligations of the contract was not reasonable, but the commission having done that and thus placed the parties on an equality, it was manifestly inequitable and unjust to require appellant to bear the whole expense of operation. There is evidence that a fair and reasonable apportionment of the cost of operation would be that the parties should bear the expense in proportion to the number of times which each one should use the interlocking device. When the device is installed neither railroad company will be required to stop except when the crossing is occupied by the other, and whether or not it is fair and reasonable that they should share the

cost in proportion to the use they respectively make of the device, which seems *prima facie* correct, that element can not in justice be ignored and the entire burden be cast on one.

It is urged that to set aside the order will leave the crossing unprotected. That is not so, inasmuch as the present utilities commission may make any order necessary to protect the public that is not unjust to either corporation.

The decree of the circuit court is reversed and the cause is remanded, with directions to vacate and set aside the order appealed from.

*Reversed and remanded.*