(No. 21976.—)

V. C. HAMANN, Defendant in Error, *vs.* ELMER LAWRENCE *et al.* Exrs., Plaintiffs in Error.

*Opinion filed October 21, 1933—Rehearing denied Dec. 16, 1933.*

A. L. & C. M. Granger, and Miller & Shapiro, for plaintiffs in error.

Braun, Anderson & Norby, and Butz & Taylor, (Joseph H. Braun, Joseph P. Brodie, and Max H. Braun, of counsel,) for defendant in error.

Mr. Justice Farthing delivered the opinion of the court:

On August 4, 1930, V. C. Hamann, defendant in error, (hereafter called plaintiff,) was driving north on State bond issue route No. 49, which is a concrete, hard-surfaced highway, with four lanes for traffic thereon. There is a gravel-surfaced road intersecting said highway at a point approximately one mile south of Indian Oaks, Illinois, in Kankakee county. This gravel road runs east and west. The Hamann automobile (a Franklin car) was in the outer or eastern lane as it approached this intersection. The value of this car was stipulated to be $1500. The witnesses with plaintiff were F. L. Bratt, who rode in the front seat of the Franklin, and Mrs. Ella Bratt, who rode in the back seat. There were also three children and Mrs. Hamann in the car. As the Franklin car approached the intersection a Chevrolet automobile approached it from the east. The time was evening, dusk, and both cars had their lights on. In the Chevrolet were Vernon Lawrence and Lottie Lawrence, his wife. The Chevrolet belonged to Elmer Lawrence, Vernon's son, and had been loaned to the father. The Franklin car was traveling at from forty to fifty miles per hour. The Chevrolet driver made no stop at the intersection although there was a standard stop sign erected on the east side of highway No. 49 and on the north side of the intersecting highway. When Hamann was approximately two hundred feet south of the cross-road he saw the Chevrolet was not making the stop and swerved his

Franklin car to the west. It collided with the Chevrolet car at the intersection and at a point on the highway at or about the third lane of traffic, numbering from east to west. Plaintiff's car ran off the road, into a ditch and an embankment and was demolished. Bratt, who rode in the Franklin car, was rendered unconscious. Mrs. Lottie Lawrence also became unconscious and remained in that condition for several weeks and had no recollection of the facts surrounding the collision. Vernon Lawrence was killed outright. A culvert was distant ten feet north of the north line of the gravel road, and the Franklin car stopped after the collision about sixty or seventy feet north of the culvert, with the rear of the car in the ditch and the front against the embankment. The Chevrolet car was about twenty feet away, on the shoulder of the highway, towards the south.

Suit was filed in the circuit court of Kankakee county. The declaration alleged the damages to plaintiff's Franklin automobile amounted to $1800 and that Vernon Lawrence "was then and there possessed of an automobile which the defendants' testate was then and there driving," etc. A trial was had before a jury, and a verdict in favor of plaintiff and against defendants was returned, assessing plaintiff's damages at $1500. Motion for a new trial was overruled and a judgment was entered upon the verdict.

Defendants made a motion at the close of the evidence for plaintiff to exclude the testimony and direct a verdict for defendants because "(1) there was no proof that Vernon Lawrence was the owner of or operating the Chevrolet in question; (2) there was no proof that the plaintiff was in the exercise of due care and caution for the safety of his automobile just before and at the time of the collision between the automobiles; (3) there was no proof that Vernon Lawrence carelessly and negligently operated the automobile of which the plaintiff in his *narr.* complains; and (4) there was a variance between the allegations of the

*narr.* and the proofs, in that there was no proof that Vernon Lawrence was operating the automobile at the time and place in question." This motion was overruled. Thereupon defendants moved the court to exclude the testimony relative to the stop sign, for the reason that there was no authority in law for the erection of a stop sign at said place; "that that part of section 3 of sub-section 2 of paragraph 33 of an act of the General Assembly entitled 'An act in relation to motor vehicles and to repeal a certain act therein named,' approved June 30, 1919, and in force January 1, as amended, which provides that the Department of Public Works and Buildings may prescribe such traffic regulations relating to the right of way and boulevard stops as traffic conditions, in the discretion of the department, warrant, in so far as Routes 47 to 185, inclusive, are concerned, is unconstitutional, in that it vests legislative authority in the Department of Public Works and Buildings, contrary to the constitution of this State." This motion was denied. At the close of all the evidence defendants renewed their latter motion, and it was again overruled. Defendants then offered a motion to exclude all of the evidence and for a directed verdict, assigning the following reasons: (1) "There is no proof that the plaintiff was in the exercise of due care and caution for the safety of his automobile just before and at the time of the collision between the automobiles; (2) there is no proof that the defendants' testate carelessly and negligently operated the automobile of which the plaintiff in his *narr.* complains." This motion was overruled.

Defendants have sued out a writ of error from this court, alleging that the constitutionality of a statute is involved, and assign as error the rulings of the circuit court of Kankakee county in sustaining the validity of that portion of sub-section 3 of section 33 of an act of the General Assembly entitled "An act in relation to motor vehicles and to repeal a certain act therein named," as follows: "* * *

at intersections of a highway which has been designated by law as one of Routes 47 to 185, inclusive, and upon which has been constructed a durable hard-surfaced road with any other highway, the Department of Public Works and Buildings may prescribe such traffic regulations relating to the right of way and boulevard stops as traffic conditions, in the discretion of the department warrant. Appropriate signs or warning lights shall be erected to give notice of any such traffic regulations." (Laws of 1931, p. 793.)

Defendants urge that such provision of section 33 is unconstitutional, first, because it is an attempted delegation of legislative authority to an administrative body; and second, because it discriminates against motor vehicles in favor of all other traffic. We shall first consider these questions, for the reason that most of the assignments of error flow from them and their determination will dispose of all such matters.

The contention that the above provision discriminates against motor vehicles and in favor of all other forms of traffic is no longer debatable. This court held in *Westfalls Storage Co.* v. *City of Chicago,* 280 Ill. 318, at page 319; "The classification provided for in the ordinance here questioned has been sanctioned, in terms, by the express wording of section 12 of the motor vehicle statute enacted in 1915, and the constitutionality of this statute on this point has been, in effect, sustained by this court in several cases. (*City of Chicago* v. *Francis,* 262 Ill. 331; *City of Lincoln* v. *Dehner,* 268 id. 175; *Graham* v. *Hagmann,* 270 id. 252; *Heartt* v. *Village of Downers Grove,* 278 id. 92.) Motor vehicles have been classified separately from horse-drawn vehicles and have been the subject of separate legislation ever since they came into general use. Their departure in character, use and speed from horse-drawn vehicles has been so great as to justify such classification, even though there is some similarity in weight, length and use between the motor truck and the kind of horse-drawn vehicles em-

ployed by public cartmen for commercial purposes. * * * The question of reasonable classification is primarily for the legislative branch of the government and only becomes a judicial question when such legislative action is clearly unreasonable. The legislature may classify persons or objects for the purpose of legislative regulation and control, provided such classification is not an arbitrary one and is based upon some substantial difference bearing proper relations to the classification."

There might be considerable weight given the contention that the first constitutional question raised by defendants is also not debatable, for the reasons, first, that the power of the legislature to delegate authority to administrative officers has been well and clearly defined by this court in numerous cases; second, that it is apparent from an examination of the section in question that the authority given does not exceed or go beyond the narrow limits defined by decisions of this court; and third, that nothing new by way of the determination of constitutional questions would be added. Still, where this question of delegation of authority is involved, we feel that it is wiser in view of the particular importance of this section of the Motor Vehicle act upon the safety of the traveling public, and wiser in view of the greater importance of any such constitutional question, for this court to determine the question raised as to whether there has been a violation of the constitutional limitation of legislative powers.

As early as 1848 this court, in passing on the above question, said in the case of *People* v. *Reynolds,* 5 Gilm. 1, at page 12, speaking through Mr. Justice Caton: "We may well admit that the legislature cannot delegate its general legislative authority, still it may authorize many things to be done by others which it might properly do itself. All power possessed by the legislature is delegated to it by the people, and yet few will be found to insist that whatever the legislature may do it shall do or else it shall go undone. To

establish such a principle in a large State would be almost to destroy the government." This court has collected and reviewed the cases on this subject in its decision in *Block v. City of Chicago,* 239 Ill. 251. It was there held, in answer to the same objection, that an ordinance was not unconstitutional which authorized the chief of police to determine whether a picture or series of pictures is immoral or obscene and to grant or refuse permission to exhibit such picture or pictures.

The language of this court in its decision in *Spiegler v. City of Chicago,* 216 Ill. 114, at page 129, we think is peculiarly applicable to this case. It was urged that an ordinance was void because it attempted to delegate legislative power to the commissioner of public works of the city of Chicago by requiring all oil wagons to be equipped with drip-pans. The kind or character to be used was left to the discretion and determination of the commissioner. The court said: "The power to legislate is not conferred by said ordinance upon the commissioner of public works, but he is only given power to approve the drip-pans or other devices with which the said tank-wagons or other wagons or vehicles are equipped. The power thus conferred upon the commissioner of public works pertains solely to the execution of the ordinance and not to the passage thereof."

In *Arms* v. *Ayer,* 192 Ill. 601, at page 612, the court, in discussing a statute requiring fire-escapes to be constructed in certain classes of buildings but leaving the number and location of the fire-escapes to the inspector of factories, says: "In the execution of the law the inspector of factories is given a discretion as to the number, location, material and construction of such escapes in each and every building. We are unable to see in what way the act, thus understood and construed, delegates to the inspector of factories legislative power."

In the last mentioned case this court quoted again with approval from Sutherland on Statutory Construction, as follows: "The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." This principle, as stated, was again quoted by this court with approval in *Spiegler* v. *City of Chicago, supra.* In the case of *People* v. *Reynolds, supra,* this court further said: "While the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet can not understandingly or advantageously, do itself. Without this power, legislation would become oppressive, and yet imbecile."

Section 33 of the Motor Vehicle act (Laws of 1931, p. 791,) is as follows:

"(1) In making a left turn at intersections of highways, motor vehicles shall give the right of way to motor vehicles approaching from the opposite direction.

"(2) Except as hereinafter provided motor vehicles traveling upon public highways shall give the right of way to vehicles approaching along intersecting highways from the right and shall have the right of way over those approaching from the left.

"(3) But motor vehicles entering upon or crossing

"(1) A highway which has been designated by law as one of Routes 1 to 46 inclusive, in the act selecting such routes for improvement by the State and upon which has been constructed a durable hard-surfaced road; or

"(2) A street or other thoroughfare in cities, villages and towns which has been designated and marked by the Department of Public Works and Buildings to extend or connect such routes, shall come to a full stop as near the

right of way line as possible before driving on the paved portion and regardless of direction, shall give the right of way to vehicles upon said highway. At all intersections of highways where, by the provisions of this paragraph a stop is required before entering upon an intersecting highway, the Department of Public Works and Buildings shall place and maintain a suitable stop warning sign easily visible to persons approaching such intersections.

"However, paragraph 3 does not apply to the intersection of two of said highways. At such intersections and at intersections of a highway which has been designated by law as one of Routes 47 to 185 inclusive and upon which has been constructed a durable hard-surfaced road with any other highway, the Department of Public Works and Buildings may prescribe such traffic regulations relating to the right of way and boulevard stops as traffic conditions, in the discretion of the department, warrant. Appropriate signs or warning lights shall be erected to give notice of any such traffic regulations."

By the above statute the legislature has gone carefully and in detail into the matter of prescribing traffic regulations. The law with reference to right of way and boulevard stops has been defined in detail with almost as much particularity as it would be possible for a legislative body meeting biennially to do. This court will take judicial notice of the existence of the extensive, intricate system of improved highways and intersecting highways, and of the changing conditions of traffic existing thereon. It will still further take judicial notice of the fact that no legislative body could keep pace with the details of changing traffic conditions and hazards in general to traffic on so great a system of highways. The existence of these recognized facts and conditions impels the adoption of an adequate agency supplementing the legislative arm of the government if the safety of the traveling public is to be promoted. After the legislature has done all that it reasonably can do in laying

down general laws as to right of way and boulevard stops, it has provided, in effect, that where a dangerous condition is found from time to time, and in divers places, to exist, such an agency shall determine such fact and shall indicate the necessity of a different rule as to the right of way, or the necessity of a boulevard stop at the intersection in question, by appropriate lights or the erection of a standard stop sign. The only rules mentioned in the section in question to be made by the agency adopted are as to right of way and boulevard stops. This same subject matter has for years been delegated to traffic policemen at street intersections. We are unable to see in this section of the statute any improper delegation of legislative power and are therefore constrained to hold that it is constitutional.

This disposes of all of the objections made by defendants at the trial of the case, based upon their theory that the act in question is unconstitutional. The legislature, by the terms of the act itself, made the erection of a stop light or standard stop sign notice of the existence of an exception to the usual rule of traffic as to right of way, and that part of the public traveling in automobiles was required to not only observe but to heed such warning and notice. Evidence of the existence of the standard stop sign at the intersection in question in this case was therefore properly received, and the instructions of the court with reference thereto correctly stated the law.

There was, in our opinion, ample evidence in this record to warrant the jury in finding all the material allegations contained in the plaintiff's declaration as proved and true. There was, therefore, no error on the part of the trial court in overruling defendants' motions for a directed verdict.

In view of the evidence disclosed by this record the jury was fairly instructed as to the law of the case.

Finding no reversible error in the record, the judgment of the circuit court of Kankakee county is affirmed.

*Judgment affirmed.*

Upon petition for rehearing the following additional opinion was filed:

Mr. JUSTICE FARTHING: In the petition for rehearing filed in this cause the plaintiffs in error assigned for the first time additional grounds of objection to the sixth instruction given at the request of the defendant in error. This instruction is subject to the criticism directed against it, but in view of Rule 15 of this court, which provides, in part, that "no alleged error or point not contained in such brief shall be raised afterwards, either by reply brief or in oral or printed argument or on petition for rehearing," this objection will not now be considered.

The petition for rehearing is therefore denied.

*Petition for rehearing denied.*