(No. 26263.—

THE INVESTORS SYNDICATE OF AMERICA, INC., *et al.* Appellees, *vs.* EDWARD J. HUGHES, Secretary of State, Appellant.

*Opinion filed Nov. 18, 1941—Rehearing denied January 14, 1942.*

GEORGE F. BARRETT, Attorney General, (ALBERT E. HALLET, JR., of counsel,) for appellant.

JOHN L. McINERNEY, and DON M. PEEBLES, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendant, Edward J. Hughes, Secretary of State, appeals from a judgment of the circuit court of Cook county ordering the issuance of a writ of *mandamus* commanding defendant to issue to the plaintiff, the Investors Syndicate of America, Inc., a Minnesota corporation, a certificate of authority to transact business in this State as a foreign corporation.

Plaintiff is a wholly owned subsidiary of the Investors Syndicate, an old, established corporation, which parent corporation has done business in Illinois for many years, and at present has outstanding in this State installment savings contracts and certificates of an aggregate maturity value of approximately $40,270,000, with a cash surrender value of approximately $3,460,000. The business dealings of the parent company, in this State, have always been satisfactory and no investment with it has been lost. It became subject to the terms of the Federal Investment Company act, effective January 1, 1941, which provided for the registration and regulation of investment companies with the Securities and Exchange Commission. After due investigation and consideration, the parent company concluded it could best and most efficiently function under that act, through the medium of a wholly owned subsidiary, which plan met with the approval of the Securities and Exchange Commission.

Under that plan, the plaintiff company, as such subsidiary, was organized to take over the business of issuing and selling investment contracts after January 1, 1941, under the name the "Investors Syndicate of America, Inc."

The parent company ceased selling investment contracts on January 1, 1941. However, in accordance with the obligations of its existing contracts, it continues to collect payments, and keep funds invested on outstanding contracts until they mature. Under the plan all assets of the parent corporation are to remain intact for the benefit of its creditors alone. The operations of both companies are to be carried on by the already existing organization and personnel of the parent company. In plaintiff's statement it appears that it has of paid-in capital and surplus, $1,012,500.

On November 18, 1940, it filed a formal application with the defendant Secretary of State, pursuant to sections 102, 106 and 107 of the Business Corporations act, seeking a certificate of authority to transact business in Illinois as a foreign corporation under the name and style of the Investors Syndicate of America, Inc. Consent of the parent company to the issuance of such certificate was filed. The consent of the parent corporation does not purport to make the new corporation an agent of the parent corporation or to underwrite or guarantee the contracts of the new corporation, or to make any of the assets of the old company available for the fulfillment of contracts entered into by the new corporation. It is conceded that no one contracting with the subsidiary may look to the parent company as security for fulfilling his contract.

The Secretary of State denied the certificate on the ground that he was forbidden by the Business Corporations act to issue it. Section 104(a) (Ill. Rev. Stat. 1939, chap. 32, par. 157.104) of that act is as follows: "No certificate of authority shall be issued to a foreign corporation: (a) Which has a name the same as, or deceptively similar to, the name of any domestic corporation existing under any act of this State or any foreign corporation authorized to transact business in this State, or a name the exclusive right to which is, at the time, reserved in the manner provided in this act," etc. Plaintiff's amended petition for

*mandamus* prayed, as alternative relief, that the trial court grant an appeal from the Secretary of State's decision and hear its petition *de novo* under section 148 of the Business Corporations act.

Defendant filed a motion to dismiss on the grounds that under said section 104(a) of the Business Corporations act it was his duty to refuse to issue a certificate to plaintiff because its proposed name was "deceptively similar" to that of another corporation authorized to transact business in Illinois. The court denied defendant's motion and ordered him to answer. He, however, elected to stand on his motion to dismiss and a writ of *mandamus* was ordered as prayed. The court also denied a trial *de novo* on the ground that section 148 of the Business Corporations act, purporting to grant that right, is an unconstitutional attempt to impose administrative duties upon the courts. It appears from the record that both parties requested a hearing *de novo* as on appeal.

Section 148 of the Business Corporations act provides that if the Secretary of State shall fail to approve any document before the same shall be filed in this office, as provided in the act, he shall give written notice to the person or corporation delivering the same, specifying the reasons therefor. The section then further provides: "From such disapproval such person or corporation may appeal to the circuit or superior court of the county in which the registered office of such corporation is or is proposed to be situated, by filing with the clerk of such court a petition setting forth a copy of the articles or other document sought to be filed and a copy of the written disapproval thereof by the Secretary of State; whereupon the matter shall be tried *de novo* by the court, and the court shall either sustain the action of the Secretary of State or direct him to take such action as the court may deem proper." Plaintiff, appellee here, contends that the court erred in not granting the statutory appeal and in holding section 148

unconstitutional. No cross-appeal has been filed but the Attorney General, in his brief, expresses the opinion that the trial court was right in so holding, but asks that the validity of section 148 be decided on this appeal.

There have been numerous cases in other jurisdictions concerning the validity of similar statutes providing for so-called appeals from decisions of various State officers and bodies to the courts. A statute of this nature which designates the procedure as an "appeal" but provides for a hearing *"de novo"* on a petition setting forth a copy of the documents sought to be filed, and a copy of the written disapproval of the officer or commission, this court has held, does not confer appellate jurisdiction upon the court, but merely authorizes it to exercise its original jurisdiction. To that effect are *Railroad and Warehouse Com.* v. *Litchfield and Madison Railway Co.* 267 Ill. 337, and *Maxwell* v. *People,* 189 id. 546. This court has also upheld the "appeal" provisions of section 68 of the Public Utilities act which provides for an appeal to the circuit court "for the purpose of having the reasonableness or lawfulness of the rule, regulation, order or decision inquired into and determined." This court held in *People's Gas Light and Coke Co.* v. *City of Chicago,* 309 Ill. 40, that, though termed an "appeal," the act only provided, in effect, for an original judicial investigation of the matter, and that the court had original jurisdiction.

Counsel for defendant cites *North Chicago Hebrew Congregation* v. *Board of Appeals,* 358 Ill. 549, *Hopkins* v. *Ames,* 344 id. 527, and *City of Aurora* v. *Schoeberlein,* 230 id. 496, as being inconsistent with the rulings of the court just discussed. All of these cases involved an appeal from administrative boards acting in a non-judicial capacity, and the statutes in question purported to give the right of appeal and did not provide for an exercise of original jurisdiction through a trial *de novo.* Because such boards were non-judicial bodies, it was held that there

could not be an appeal from such boards to a judicial body. (*Maxwell* v. *People, supra.*) In the present case, section 148 of the Business Corporations act, provides only for the filing of a copy of the document sought to be filed and a copy of the written disapproval thereof by the Secretary of State. Judicial proceedings begin with the filing of these instruments and the court does not exercise appellate jurisdiction in such a case, and there is then no appeal in a legal sense. (*Railroad and Warehouse Com.* v. *Litchfield and Madison Railway Co. supra.*) The "appeal" provided for is a method of procedure for bringing before the court questions of property rights of which it has jurisdiction. (*City of Aurora* v. *Schoeberlein, supra.*) The court is to determine *de novo* from the pleadings presented whether the order of the Secretary of State is lawful and reasonable, and the right of plaintiff to the use of its proposed corporate name. In view of the holding of this court in similar cases, we are of the opinion that section 148 is not open to constitutional objection that it is an attempt to impose administrative duties on the courts.

Plaintiff has raised for the first time in his answer to defendant's appeal to this court, the validity of section 104.(a) of the Business Corporations act, arguing that it is unconstitutional in that it attempts to delegate legislative powers to the Secretary of State. In a case such as this, where the appellee won in the court below and the constitutional question comes into existence for the first time in this court, by reason of the position of the People, this court will hear the point as raised. *People* v. *Railway Mail Mutual Benefit Ass'n.* 371 Ill. 102.

Plaintiff contends that the words "deceptively similar" have no generally known or accepted meaning; that, therefore, the use of those words, in the statute, without including a statutory definition, renders the act incomplete and meaningless and gives to the Secretary of State power not only to execute the law, but also to determine what the

law is. This precise question has not heretofore been raised in this court, although the Secretary of State's refusal to issue corporate certificates was upheld in *People* v. *Rose,* 225 Ill. 496, and *Illinois Watch Case Co.* v. *Pearson,* 140 id. 423. This court has in numerous cases held that as the requirements of a statute can be stated only in general terms, a reasonable discretion is reposed in the officials charged with its enforcement. In the case of *Klafter* v. *State Board of Examiners,* 259 Ill. 15, the act considered authorized the examiners to revoke an architect's license for "gross incompetency or recklessness." The contention was made that this language was uncertain and had no generally known or accepted meaning. Applying the rule just stated, this court held that the statute was not void for uncertainty. In *People* v. *State Board of Dental Examiners,* 110 Ill. 180, the words involved were: "reputable dental college." In *People* v. *McCoy,* 125 Ill. 289, the use of the words "unprofessional or dishonorable conduct," in a statute, were questioned. In both instances it was held that such words did not render the act void for uncertainty. In the case of *Hamann* v. *Lawrence,* 354 Ill. 197, this court upheld provisions of the Motor Vehicle act which delegated power to the Department of Public Works to post signs and adopt different traffic rules "where a dangerous condition is found from time to time, and in divers places, to exist." The language used in the statute under consideration comes within the rule applied to the language of the statutes considered in the foregoing cases. Webster's International Dictionary defines "deceptive" as "having power to deceive." The words "deceptively similar" are commonplace, and have a generally known and accepted meaning, and so require no further elaboration to lend certainty to the statute. We cannot say that the meaning of the term "deceptively similar" is so indefinite and uncertain as to create a situation where the officer enforcing it must

decide what the law is, and the contention of plaintiff that this section of the act is unconstitutional, must fail.

There remains for decision the question whether the trial court erred in entering judgment against defendant on the record before it. Counsel for plaintiff argue that section 104(a) of the Business Corporations act is for the sole purpose of protecting a corporation from unfair competition and the property rights it enjoys in the use of its name, and since the parent corporation here has given its consent to the use by its subsidiary, of a name similar to that of the parent corporation, the act of the Secretary of State in refusing to issue a license to the subsidiary, because of the similarity of the names, is arbitrary and capricious. The State, on the other hand, contends that a further purpose of said section is to protect the public from being deceived, through the adoption and use of similar names, and that the act of the Secretary of State in this case is not arbitrary and capricious, but rather is a performance of a duty to protect the public.

While it is true that a majority of the adjudicated cases involving the use of a corporate name have arisen between hostile corporations, thus raising questions of unfair competition and property rights in the use of a corporate name, it is obvious both from a standpoint of public policy and from the construction of the statutes involved, that such a statute has the dual purpose of protecting competing corporations, and likewise the public, from deception in the use of deceptively similar corporate names. If the names of the corporations are "deceptively similar" the act applies and the Secretary of State is required to deny his certificate, though the new corporation may be in a position to deal in a manner more advantageous to its customers than the old. The General Assembly has not seen fit to permit the Secretary of State to weigh benefits in such a case.

Plaintiff cites numerous cases where the courts have refused to consider the question of fraud or imposition on the public, in controversies between hostile corporations over the use of a name. In such cases it has been held that the injunctive relief sought was based upon the protection of property rights of the plaintiff, and that an injunction will not issue unless it is made to appear that the proposed use of the name will result in injury to the complainant. (*People* v. *Rose, supra; International Committee* v. *Young Women's Christian Association,* 194 Ill. 194; *Drummond Tobacco Co.* v. *Randle,* 114 id. 412.) Even in injunction cases between competing corporations the trend of decision is to place less emphasis on competition and more on confusion, as is evidenced by the following cases: *Vogue Co.* v. *Thompson-Hudson Co.* 300 Fed. 509, *Aunt Jemima Mills Co.* v. *Rigney & Co.* 247 Fed. 407. As was said in *Ward Baking Co.* v. *Potter-Wrightington,* 298 Fed. 398, "The test should be whether the public is likely to be deceived." This court has held that the Secretary of State will not be required by *mandamus* to issue a certificate of incorporation when it is plainly apparent that the effect will be to mislead the public in dealing with such corporation. *People* v. *Rose, supra; People* v. *Stratton,* 335 Ill. 455.

That it was the intent of the General Assembly by this section to protect the public, as well as the property rights of existing corporations, is apparent from the trend of legislation in this regard. Earlier provisions expressly permitting an existing corporation to change its name to one similar to another existing corporation, with the consent of the latter, have disappeared from the Corporations act. Section 104(a) of the act now in force contains no provisions for the consent of an existing corporation. The use of the term "deceptively similar" indicates that it was not the sole purpose of the act to protect the property rights of existing corporations, but also that the public be protected against any deception arising out of the use of similar

names. Thus we must conclude that the statute in question allowed the Secretary of State to exercise discretion to the end that the public would be protected.

Was plaintiff's name deceptively similar to that of the parent corporation, and was the decision of the Secretary of State so finding, a reasonable exercise of the discretion vested in him? It will be noted that the only difference between the two names lies in the fact that plaintiff has added the words "of America, Inc." to that of the parent corporation, "Investors Syndicate," and the question is whether such addition is such a distinguishing feature as to make it unlikely that anyone dealing with plaintiff would think that he was dealing with the parent company. In *United States Ozone Co.* v. *United States Ozone Co. of America,* 62 Fed. (2d) 881, it was held that the two names indicated in the title to the case would inevitably result in deception of the buying public. In *Mutual Export and Import Corp.* v. *Mutual Export and Import Corp. of America,* 241 Fed. 137, it was decided that the name of respondent "so nearly resembled that of complainant as to be calculated to deceive." Likewise in the case of *Benevolent and Protective Order of Elks of the United States* v. *Improved Benevolent and Protective Order of Elks of the World,* 122 Tenn. 141, 118 S. W. 389, it was held that "the name of the defendant was so similar that, in the nature of things, it will cause one order to be mistaken for the other, and the enterprises of each to be confused with those of the other." To like effect is the case of *Glucose Sugar Refining Co.* v. *American Glucose Sugar Refining Co.* 56 Atl. 861.

In the present case, where the subsidiary corporation contemplates engaging in the same business as previously transacted by the parent corporation, and conducting that business at the same locations and with the same personnel, the addition of the words "of America, Inc." is not sufficient to eliminate confusion and uncertainty of those dealing with the two corporations. The parent corporation has

contracts of over forty million dollars and has very large capital and surplus, yet persons dealing with the Investors Syndicate of America may not rely upon the assets of the parent corporation but must look solely to the subsidiary which has substantially less assets. The similarity of names is sufficient, in all likelihood, to cause persons dealing with the plaintiff to be deceived into thinking that they were dealing with the corporation of larger assets.

In support of its contention that defendant acted arbitrarily and capriciously, plaintiff has taken from the records in the office of the Secretary of State names of various corporations now existing, which, it contends, bear a greater similarity than the two names involved in this case. However, it is impossible for this court to determine the facts concerning the issuance of the certificates in those cases, nor can plaintiff now be heard to say that because "deceptively similar" names have been permitted in the past, the Secretary of State should now allow plaintiff the use of such a name. From the records before us we cannot say that defendant has abused the discretion vested in him by the statute, or that he has acted arbitrarily and capriciously, and this being so, plaintiff is not entitled to a writ of *mandamus* to compel him to issue the desired certificate. (*People* v. *Board of Review,* 326 Ill. 124.) Where a public officer has exercised discretion in the course of an official duty, the courts are careful of encroaching upon the discretionary powers of such officer, and if reasonable doubt exists as to the question of discretion or want of it, the courts will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer. (*MacGregor* v. *Miller,* 324 Ill. 113.) We are of the opinion that the writ of *mandamus* was wrongfully issued. The judgment of the trial court directing the writ is reversed.

*Judgment reversed.*