**DAY–BRITE LIGHTING, INC., Plaintiff-Appellee,**

v.

**COMPCO CORPORATION, Defendant-Appellant.**

**DAY–BRITE LIGHTING, INC., Plaintiff-Appellant,**

v.

**COMPCO CORPORATION, Defendant-Appellee.**

**Nos. 13699, 13700.**

United States Court of Appeals Seventh Circuit.

Dec. 14, 1962.

Rehearing Denied Jan. 18, 1963.

Owen J. Ooms, Malcolm S. Bradway, Ooms, Welsh & Bradway, Chicago, Ill., Frederick M. Woodruff, Gravely, Lieder & Woodruff, St. Louis, Mo., of counsel, for Day-Brite Lighting, Inc.

Jerome F. Fallon, Timothy L. Tilton, Chicago, Ill., for Compco Corp.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, Day-Brite Lighting, Inc., brought suit against defendant, Compco Corporation, for infringement of plaintiff's design patent and unfair competition.

The District Judge found that the patent was invalid and not infringed. He found the defendant was guilty of unfair competition, granted an injunction and ordered an accounting for damages. The defendant appealed this latter part of the judgment. The plaintiff cross-appealed the finding of invalidity and non-infringement of the patent.

The design of the patent concerns reflectors in commercial fluorescent lighting fixtures. The fixtures here involved are of the "uplight" type; 48 inches long; made of a housing, a ballast (transformer), a reflector, sockets and wiring for long lighting tubes; all sold, not in component parts but as a unit, ready for ceiling installation. The reflector, sandwiched, as indicated, between the housing and the light tubes, has elongated slots to allow light from the tubes to be directed upward against the ceiling as well as down toward the floor. The fixtures may be positioned end to end in a continuous line.

This type of fixture, popular in the early 1950's and marketed by a number of companies, including plaintiff's, used cross ribs between the elongated slots, the housings and over-all fixtures being similar in general appearance and size.

In 1954, after complaints of warpage in the reflectors, which caused the porcelain reflective coatings to chip, plaintiff altered its design by extending the cross ribs down the sides of the U-shaped re-

flector. Although this also presented an attractive appearance, it served to strengthen the reflector. The changed design was embodied in fixtures which the plaintiff began selling in or about October, 1954. These are sold under the name "C F I–10." The new appearance of the plaintiff's fixtures was the subject of its Patent No. Des. 176,367, issued December 13, 1955, which plaintiff sought to enforce in this action. Styling is considered important in the industry and such styling does provide product identification which increases salability of products.

In 1955, Mitchell Manufacturing Company manufactured fixtures with reflectors under the names "Mitchell" and "Dynalite," which were almost exact copies of plaintiff's C F I–10 design. On or about December 31, 1955, the plaintiff gave notice of infringement to Cory Manufacturing Company, which had then acquired Mitchell Manufacturing Company and was advertising the reflectors. On or about March 9, 1956, defendant acquired certain of the Mitchell assets from Cory, and defendant then manufactured the Mitchell and Dynalite reflectors, using the same advertising and promotional literature put out by Mitchell and Cory.

On or about March 30, 1956, the plaintiff gave notice of infringement to the defendant. Defendant denied both infringement and the validity of the plaintiff's patent. Two of the plaintiff's other competitors who were offering reflectors having the overall appearance of C F I–10 entered into consent judgments holding the patent valid and infringed. Others discontinued manufacturing such reflectors on notice of infringement.

The District Judge held that plaintiff's patent was invalid. He specifically found that the function of the cross ribs was to strengthen against warp and twist, to minimize distortion due to the heat of the porcelain enameling process, and to prevent chipping of the finish after cooling; that the size, shape and length were dictated by the manufacturing process. He also found that had plain-

tiff's patent been valid, it would have been infringed by the defendant's reflectors.

The evidence of infringement presents no substantial issue. We must agree with the District Court that if the plaintiff's patent is valid, it is also infringed.

The evidence clearly indicates that the change of design as shown in the patent in suit arose out of a need to meet complaints of warping. While a choice of ribbing to meet the need was available, any particular choice had to be made from those types of ribbing which would be suitable to the functional requirement. The rib design had to be of a type to strengthen the reflector against warp and twist. The plaintiff's Manager of Tools and Dies, Bert A. Kaeppel, testified that the depth and shape of the ribbing was dictated by production requirements. He stated that drawing the ribs "too deep" or making the side of the ribs "much more nearly parallel" would create a "problem of tearing the metal."

[1] A design patent covering mere functional configuration does not meet the standard of invention for a design patent. Spaulding v. Guardian Light Co., 7 Cir., 1959, 267 F.2d 111, 113, cert. den. 361 U.S. 883, 80 S.Ct. 154, 4 L.Ed.2d 119; Hopkins v. Waco Products, Inc., 7 Cir., 1953, 205 F.2d 221, 224.

The District Court's decision that the design of the cross ribs was functional and dictated by the limitations of the manufacturing process is fully supported by the evidence. The Trial Judge also had before him prior art which had not been considered by the Patent Office. The Abernathy Mechanical patent (No. 2,332,770, October 26, 1943), the only reference cited, does not show cross ribs. The prior art reflectors listed by the Trial Judge in his Finding of Fact No. 7 do show transverse ribs. Thus the presumption of validity otherwise attaching to a patent was weakened here. Senco Products, Inc. v. Fastener Corp., 7 Cir., 1959, 269 F.2d 33, 34, cert. den. 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960); Hobbs v. Wisconsin Power

& Light Co., 7 Cir., 1957, 250 F.2d 100, 105, cert. den. 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762.

It is the plaintiff's contention that the Trial Court decided the question of validity purely on the premise that certain individual elements in the design were old, and failed to consider the "over-all appearance" with its subtle changes and arrangements of old lines and shapes. We cannot agree.

In Amerock Corporation v. Aubrey Hardware Mfg., Inc., 7 Cir., 1960, 275 F.2d 346, Chief Judge Hastings examined the entire line of decisions in this Court respecting design patents. At page 348 of that opinion, he said:

"It is settled beyond dispute that '[a] design patent, in order to be valid, must disclose a design that is new, original and ornamental, unanticipated and inventive in character, and beyond the skill of the ordinary designer or draftsman.'" [Citing cases.]

We are satisfied that the District Court applied the proper criteria and correctly found that the design patent in suit was invalid.

This brings us to the question of unfair competition. While the District Judge did not specifically find "secondary meaning" identifying the reflectors with the plaintiff as a source, he did find that the appearance of the C F I–10 has the capacity to identify the plaintiff in the trade and does, in fact, so identify the plaintiff to the trade. He found that concurrent sale of C F I–10 and Mitchell-Dynalite fixture reflectors was likely to cause confusion in the trade, and that actual confusion had occurred. Therefore, although he dismissed the Complaint insofar as patent infringement was concerned, he did find the defendant guilty of unfair competition. He granted an injunction against unfair competition by sale or attempted sale of reflectors identical with or confusingly similar to the C F I–10 or the Mitchell "Dynalite," and ordered an accounting for damages resulting from such unfair competition.

Defendant contends that confusion of purchasers is impossible because those who buy this type of comparatively expensive product (which is always shipped in clearly marked containers) are skilled, experienced and discriminating purchasers. However, the District Court did find confusion likely, and there is substantial evidence in the record to support that finding. We cannot characterize the finding as "clearly erroneous" and may not set it aside. Federal Rules of Civil Procedure, Rule 52.

The defendant argues that in the absence of a finding of either "secondary meaning" or "palming off," there can be no holding of unfair competition; that the essence of unfair competition is fraud. Defendant relies on statements in the opinion on petition for rehearing in Day-Brite Lighting, Inc. v. Sandee Mfg. Co., 7 Cir., 1961, 286 F.2d 596, 600, and similar expressions from this and other Circuits. In the Sandee case, the plaintiff in its petition for rehearing had sought clarification of the decision on the issue of unfair competition, the plaintiff having presumed that this Court intended to affirm the District Court on the issue of unfair competition, while holding that the patent in suit was invalid and not infringed. In clarification, the opinion on the petition for rehearing stated:

"We realize, of course, that a case of unfair competition may be made, separate and apart from that of infringement. In this case, however, we think the two issues were so closely allied that the former could not prevail in the absence of the latter and that holding the patent invalid and not infringed also disposed of the action for unfair competition adversely to plaintiff."

The opinion on petition for rehearing then cites Zangele & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 1943, 133 F.2d 266, 269; General Time Instruments Corp. v. United States Time Corp., 2 Cir., 1948, 165 F.2d 853, 854; and Sinko et al. v. Snow-Craggs Corp., 7 Cir., 1939, 105 F.2d 450, to the

effect mere copying of the teaching of an invalid patent does not constitute unfair competition. This *was* the law in Illinois. It is not contested that Illinois law governs the case before us.

However, there has been a change in the law of Illinois on this subject, as analyzed by Judge Duffy in his opinion in Independent Nail & Packing Co. Inc. v. Stronghold Screw Products, Inc., 7 Cir., 1953, 205 F.2d 921. After stating the rule promulgated in earlier cases, Judge Duffy continues (at page 926):

"However, we think the rule announced in these cases is no longer the law of Illinois.

"In 1942 the Supreme Court of Illinois in Investors Syndicate of America, Inc. v. Edward J. Hughes, Secretary of State, 378 Ill. 413, at page 422, 38 N.E.2d 754, at page 759, stated, 'Even in injunction cases between competing corporations the trend of decision is to place less emphasis on competition and more on confusion, as is evidenced by the following cases: (citing) "The test should be whether the public is likely to be deceived." ' "

The defendant would limit the holding in Independent Nail to such "protectable" rights as trademarks. The plaintiff's reflectors, as found by the Trial Court, in findings supported by the evidence, do have the capacity to identify the plaintiff and do so identify the plaintiff in the trade. The capacity of the plaintiff's design to serve the plaintiff in somewhat the manner of a trademark does constitute a "protectable" right.

■ As noted, several choices of ribbing were apparently available to meet the functional needs of the product. The defendant did not avail itself of the other types but instead chose precisely the same design used by the plaintiff and followed it so closely as to make confusion likely. We are constrained to agree with Judge Duffy's statement in Radio Shack Corp. v. Radio Shack, 7 Cir., 1950, 180 F. 2d 200, 206, as cited with approval so recently as November 21, 1962, in Judge

Hastings' opinion in G. Leblanc Corp. v. H. & A. Selmer, Inc., 310 F.2d 449: The essence of "unfair competition" is that it be unfair, that "in all cases of unfair competition, it is principles of old fashioned honesty which are controlling."

We have examined all the arguments advanced by both parties and have concluded that the judgment of the District Court must be affirmed.

Affirmed.